313 U.S. 109 (1941)
CALIFORNIA
v.
THOMPSON.
No. 687.
Supreme Court of United States.
Argued April 3, 1941.
Decided April 28, 1941.
CERTIORARI TO THE APPELLATE DEPARTMENT OF THE SUPERIOR COURT, LOS ANGELES COUNTY, CALIFORNIA.
*110 Mr. William J. McFarland argued the cause, and Messrs. Ray L. Chesebro, Frederick Von Schrader, John L. Bland, and Bourke Jones were on the brief, for petitioner.
No appearance for respondent.
*111 MR. JUSTICE STONE delivered the opinion of the Court.
A statute of California, Ch. 390, Statutes of 1933, p. 1011, as amended by Ch. 665, Statutes of 1935, p. 1833, defines a transportation agent as one who "sells or offers to sell or negotiate for" transportation over the public highways of the state, § 2, and requires every such agent to procure a license from the State Railroad Commission authorizing him so to act. By §§ 6, 7, and 8, prerequisites to the license are determination by the Commission of the applicant's fitness to exercise the licensed privilege, the payment of a license fee of $1.00, and the filing by the applicant of a bond in the sum of $1,000, conditioned upon the faithful performance of the transportation contracts which he negotiates. By § 16 any person acting as a transportation agent without a license is guilty of a misdemeanor. The question for decision is whether the statutory exaction of the license and bond infringes the Commerce Clause of the Constitution when applied to one who negotiates for the transportation interstate of passengers over the public highways of the state.
Respondent was convicted of violation of the statute by arranging for the transportation by motor vehicle, of *112 passengers from Los Angeles, California, to Dallas, Texas, by one who, so far as appears, made only the single trip in question. The state appellate court reversed the judgment of conviction, holding on the authority of Di Santo v. Pennsylvania, 273 U.S. 34, that the statute as applied infringes the Commerce Clause. We granted certiorari, 312 U.S. 672, the question, considered in the light of our decisions since the Di Santo case, sustaining state regulations affecting interstate transportation by motor vehicle, being of importance.
Congress has not undertaken to regulate the acts for which respondent was convicted or the interstate transportation to which they related. The Motor Carrier Act of 1935, 49 Stat. 543, 49 U.S.C. §§ 301-327, which applies to certain classes of common and contract interstate carriers by motor vehicle, excludes from its operation the casual or occasional transportation by motor vehicle of passengers in interstate commerce by persons not engaged in such transportation as a regular occupation or business, § 303 (b) (9). Hence we are concerned here only with the constitutional authority of the state to regulate those who, within the state, aid or participate in a form of interstate commerce over which Congress has not undertaken to exercise its regulatory power.
The statute is not a revenue measure. Cf. Texas Transport Co. v. New Orleans, 264 U.S. 150. It applies alike to transportation agents who negotiate for transportation intrastate as well as interstate and so does not discriminate against interstate commerce. Cf. Real Silk Mills v. Portland, 268 U.S. 325. It does not appear that the regulation will operate to increase the cost of the transportation or in respects not already indicated affect interstate commerce. It is not shown to be other than what on its face it appears to be, a measure to safeguard the members of the public desiring to secure transportation *113 by motor vehicle, who are peculiarly unable to protect themselves from fraud and overreaching of those engaged in a business notoriously subject to those abuses.
As this Court has often had occasion to point out, the Commerce Clause, in conferring on Congress power to regulate commerce, did not wholly withdraw from the states the power to regulate matters of local concern with respect to which Congress has not exercised its power, even though the regulation affects interstate commerce. Ever since Willson v. Black Bird Creek Marsh Co., 2 Pet. 245, and Cooley v. Board of Port Wardens, 12 How. 299, it has been recognized that there are matters of local concern, the regulation of which unavoidably involves some regulation of interstate commerce, but which because of their local character and their number and diversity may never be adequately dealt with by Congress. Because of their local character, also, there is wide scope for local regulation without impairing the uniformity of control of the national commerce in matters of national concern and without materially obstructing the free flow of commerce which were the principal objects sought to be secured by the Commerce Clause. Notwithstanding the Commerce Clause, such regulation in the absence of Congressional action has, for the most part, been left to the states by the decisions of this Court, subject only to other applicable constitutional restraints. See cases collected in Di Santo v. Pennsylvania, supra, 40.
A state may license trainmen engaged in interstate commerce in order to insure their skill and fitness. Smith v. Alabama, 124 U.S. 465; Nashville, C. & St. L. Ry. Co. v. Alabama, 128 U.S. 96. It may define the size of crews manning interstate trains, Chicago, R.I. & P. Ry. Co. v. Arkansas, 219 U.S. 453; Missouri Pacific R. Co. v. Norwood, 283 U.S. 249, and prescribe regulations for payment of their wages. Erie R. Co. v. Williams, 233 *114 U.S. 685. It may require interstate passenger cars to be heated and guard posts to be placed on bridges of an interstate railroad. New York, N.H. & H.R. Co. v. New York, 165 U.S. 628. It may limit the speed of interstate trains within city limits. Erb v. Morasch, 177 U.S. 584. It may require an interstate railroad to eliminate grade crossings. Erie R. Co. v. Public Utility Commissioners, 254 U.S. 394, 409, 412. It may pass local quarantine laws applicable to merchandise moving in interstate commerce, as a means of protecting local health. Morgan's S.S. Co. v. Louisiana, 118 U.S. 455; Compagnie Francaise v. Board of Health, 186 U.S. 380. It may regulate and protect the safe and convenient use of its harbors and navigable waterways unless there is conflict with some act of Congress. Willson v. Black Bird Creek Marsh Co., supra; see Clyde Mallory Lines v. Alabama, 296 U.S. 261, 267. It may regulate pilots and pilotage in its harbors. Cooley v. Board of Port Wardens, supra. Where, as here, Congress has not entered the field, a state may pass inspection laws and regulations, applicable to articles of interstate commerce, designed to safeguard the inhabitants of the state from fraud, provided only that the regulation neither discriminates against nor substantially obstructs the commerce. Turner v. Maryland, 107 U.S. 38; Plumley v. Massachusetts, 155 U.S. 461; Patapsco Guano Co. v. North Carolina, 171 U.S. 345, 357, 358; Savage v. Jones, 225 U.S. 501; see also Minnesota Rate Cases, 230 U.S. 352, 398-412 and cases cited; South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 185-191 and cases cited.
The present case is not one of prohibiting interstate commerce or licensing it on conditions which restrict or obstruct it. Cf. Crutcher v. Kentucky, 141 U.S. 47; Dahnke-Walker Co. v. Bondurant, 257 U.S. 282. For here the regulation is applied to one who is not himself *115 engaged in the transportation but who acts only as broker or intermediary in negotiating a transportation contract between the passengers and the carrier. The license required of those engaged in such business is not conditioned upon any control or restriction of the movement of the traffic interstate but only on the good character and responsibility of those engaged locally as transportation brokers.
Fraudulent or unconscionable conduct of those so engaged which is injurious to their patrons, is peculiarly a subject of local concern and the appropriate subject of local regulation. In every practical sense regulation of such conduct is beyond the effective reach of Congressional action. Unless some measure of local control is permissible, it must go largely unregulated. In any case, until Congress undertakes its regulation, we can find no adequate basis for saying that the Constitution, interpreted as a working instrument of government, has foreclosed regulation, such as the present, by local authority.
In Di Santo v. Pennsylvania, this Court took a different view. Following what it conceived to be the reasoning of McCall v. California, 136 U.S. 104, it held that a Pennsylvania statute requiring others than railroad or steamship companies, who engage in the intrastate sale of steamship tickets or of orders for transportation to and from foreign countries, to procure a license by giving proof of good moral character and filing a bond as security against fraud and misrepresentation to purchasers, was an infringement of the Commerce Clause. Since the decision in that case this Court has been repeatedly called upon to examine the constitutionality of numerous local regulations affecting interstate motor vehicle traffic. It has uniformly held that in the absence of pertinent Congressional legislation there is constitutional power in the states to regulate interstate commerce by *116 motor vehicle wherever it affects the safety of the public or the safety and convenient use of its highways, provided only that the regulation does not in any other respect unnecessarily obstruct interstate commerce. Continental Baking Co. v. Woodring, 286 U.S. 352, 371; Bradley v. Public Utilities Commission, 289 U.S. 92, 95; see South Carolina Highway Dept. v. Barnwell Bros., supra, and cases cited; H.P. Welch Co. v. New Hampshire, 306 U.S. 79, 83; Eichholz v. Public Service Commission, 306 U.S. 268; Maurer v. Hamilton, 309 U.S. 598, 603; and see Ziffrin, Inc. v. Reeves, 308 U.S. 132.
If there is authority in the state, in the exercise of its police power, to adopt such regulations affecting interstate transportation, it must be deemed to possess the power to regulate the negotiations for such transportation where they affect matters of local concern which are in other respects within state regulatory power, and where the regulation does not infringe the national interest in maintaining the free flow of commerce and in preserving uniformity in the regulation of the commerce in matters of national concern. See Hartford Accident & Indemnity Co. v. Illinois, 298 U.S. 155.
The decision in the Di Santo case was a departure from this principle which has been recognized since Cooley v. Board of Port Wardens, supra. It cannot be reconciled with later decisions of this Court which have likewise recognized and applied the principle, and it can no longer be regarded as controlling authority.
Reversed.