## TUCKER v. CASUALTY RECIPROCAL EXCHANGE.

### Civ. A. No. 262.

District Court, N. D. Georgia, Gainesville Division.

Aug. 7, 1941.

E. D. Kenyon and Wheeler, Robinson & Thurmond, all of Gainesville, Ga., for plaintiff.

Hooper, Hooper & Miller, of Atlanta, Ga., and Fred L. Brewer, of Gainesville, Ga., for defendant.

RUSSELL, District Judge.

Emerson Tucker filed suit against Casualty Reciprocal Exchange as sole defendant seeking to recover damages alleged to have been sustained by the negligence of Neel Gap Bus Line, Inc., planting his suit against Casualty Reciprocal Exchange upon the ground that it was the insurer of the bus line under the terms of a policy filed with the Georgia Public Service Commission to enable the bus line to comply with the provisions of the law of Georgia and to continue its certificate of public convenience and necessity in its operations over a designated route on the highways and public roads of Georgia. It is alleged that this contract of insurance was executed by the insurer and filed with and approved by the Georgia Public Service Commission for the protection of the public and for the benefit of petitioner and other members of the public who may be injured by the negligence of the bus line.

Defendant by a motion to dismiss asserts that the bus line is a motor common carrier operating under the provisions of the Federal Motor Carrier Act of 1935, Title 49, § 301 et seq., U.S.C.A.; that such carrier has as required by the terms of the Act and the regulations of the Interstate Commerce Commission filed with such Commission a policy of insurance conditioned to pay "any final judgment recovered against such motor carrier", etc., and that the Federal Act supersedes as to this defendant (the insurer) the statutes of Georgia under which plaintiff is proceeding, and that consequently the policy and endorsement sued upon is "null and void and of no effect." It is further averred that under the terms of the Federal Act it is necessary for plaintiff to first obtain final judgment against the carrier, and as this has not been done the present action will not lie.

At the hearing of the motion evidence was introduced from which it appears that the bus line is engaged in both interstate and intrastate commerce; that it holds certificates of public convenience and necessity from the Interstate Commerce Commission for transportation "in interstate or foreign commerce" over designated routes between points in Georgia and points in the State of North Carolina, and also holds certificate of public convenience and necessity from the Georgia Public Service Commission for operations between Cleveland, Georgia, and the North Carolina state line (between which points the accident giving rise to the suit occurred). The copy of the policy in evidence discloses separate endorsements to cover insurance "under Section 215, Motor Carrier Act, 1935"; "under Section 7 of the Motor Carrier Act [of Georgia] of 1931 and/or Motor Common Carriers Act of 1931 [Ex. Sess. pp. 99, 105] as amended in 1937"; and "endorsement North Carolina—Public Automobiles."

From this it may be inferred, and indeed it is not disputed, that the same policy is filed with each of the Commissions but with endorsements applicable to the transactions of the bus line in each State in which it operates and in which it does, certainly in Georgia, both an intrastate and an interstate business. The real point at issue arises out of the fact that under the law of Georgia the insurer is subject to a suit upon the policy in the first instance despite the provision therein for suit thereon only after final judgment against the insured. Annotated Code of Georgia of 1933, Section 68-509; Great American Indemnity Company v. Vickers, 183 Ga. 233, 188 S.E. 24.

It is of course well recognized that where Congress assumes the regulation and control of interstate commerce its power is supreme and any State regulations to the contrary are of no effect. However, the Motor Carrier Act of 1935 is not only a case where Congress does not assume to occupy the entire and exclusive field of transportation by motor carriers, but on the contrary evidences by explicit language an express intention to leave intrastate commerce by motor carriers to the control of the several States. Its declaration of policy, Title 49, § 302(c), U.S.C.A., provides: "Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof."

Thus Congress expressly states the recognized fact that there are two fields of transportation: one interstate, the other intrastate, and that the regulation it provided was confined to interstate commerce. A carrier operating exclusively interstate is subject only to the Acts of Congress and the regulations of the Interstate Commerce Commission thereunder. But the Act does not purport to regulate all acts and matters indirectly related to interstate transportation by motor carriers. See California v. Thompson, 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219, decided April 28, 1941. If a carrier desires to carry on intrastate transportation, whether in connection with its interstate transportation or as exclusively intrastate transportation, it must under the express provisions of the Motor Carrier Act (regardless of any other consideration that might be mentioned) comply with the valid regulations of the State Commissions.

The two types of transportation and the consequences resulting therefrom are clearly recognized and delineated by the decision in Eichholz v. Public Service Commission of Missouri, 306 U.S. 268, 273, 59 S.Ct. 532, 534, 83 L.Ed. 641. As there stated, a carrier under the Motor Carrier Act of 1935 has "his choice either to refrain from carrying property between points in [the State] or to secure a certificate of public convenience and necessity as an intrastate carrier." In this case, having exercised a choice to secure such certificate as an intrastate carrier, he is bound equally by the terms of his contract as he is by the provisions of the Motor Carrier Act of 1935 and his contract thereunder. In case of injury to a fellow traveler upon the highways used by the insured carrier under the authority of such certificate, as is true in the present instance (by which is removed any question of the interstate relation of a passenger or shipper), certainly such injured citizen is entitled to rely upon the protection required by the State Commission.

These observations have been made as if the motor carrier were presenting the objections rather than the insurer of the motor carrier, and in consideration of the strongest argument which possibly could be presented by the insurer. Certainly the insurer occupies no more favorable position than the carrier, and even if it be conceded that the *insurer* can present such a point contrary to his contract of file [this only for the present discussion, see Hunter v. Employers Liability Assurance Corporation, 54 Ga.App. 197(2), 187 S.E. 209, affirmed, 184 Ga. 196, 190 S.E. 598], it is apparent that the Motor Carrier Act does not supersede as to the defendant insurer the Statutes of the State of Georgia referred to, and for the same reasons the requirement of the Federal Statute that a final judgment be first obtained against the carrier before a suit against the insurer does not require the abatement of the present suit, which proceeds upon the policy filed with the Georgia Public Service Commission.

Certainly no direct burden upon interstate commerce is presented by the insurer, nor that the requirements of the Georgia Public Service Commission unnecessarily obstruct interstate commerce. California v. Thompson, supra.

Able counsel for defendant rely upon the decision in University Overland Express v. Alsop, 122 Conn. 275, 189 A. 458, 463, but this is not thought to be in point here for the reason that the decision there relates to an invalid requirement of State Law which seeks to control and regulate the carrying on of interstate commerce. As stated in the decision, that "as to whether or not state regulation in respects not involved in the issues presented on this record also has been superseded or precluded thereby, we express no opinion."

It is here held that the Motor Carrier Act of 1935 expressly excepts the regulation of intrastate business and that where as a prerequisite to obtaining a permit to do such business an indemnity insurance policy is filed in compliance with the laws of the State, that such contract is enforceable by one, not a passenger or shipper, injured as a result of both intrastate and interstate transportation.

The motion to dismiss presented by the defendant accordingly is hereby denied.