**AERATED PRODUCTS CO. OF PHILA-
DELPHIA, PA., v. DEPARTMENT OF
HEALTH OF STATE OF NEW JERSEY
et al.**

No. C–1645.

District Court, D. New Jersey.

March 15, 1945.

Lum, Fairlie & Wachenfeld by Charles
S. Barrett, Jr., all of Newark, N. J., for
plaintiff.

Walter D. Van Riper, Atty. Gen. of New Jersey, Joseph A. Murphy, Asst. Deputy Atty. Gen., for defendants.

FORMAN, District Judge.

Plaintiff, a corporation of the State of Pennsylvania, is licensed to distribute and sell a product known under the trade-mark or trade name of "Instantwhip". The product or "Mix", as it is sometimes called, consists of the following ingredients: Milk or cream of a certain butterfat content, suger and vanilla. This combination is placed in a specially constructed pint container and seven grams of nitrous oxide gas are inserted in the overhead space under pressure. Each container consists of an all steel bottom with a separate stem in which a valve core is inserted. Furnished with the container is a dispenser, which screws on the valve. Pressure upon the pin in the dispenser releases the valve and allows the mix to be emitted at which time it assumes a fluffy appearance similar to whipped cream. It was the custom to pack forty such containers in one large container and to provide ice around the small containers while the product was in transit. The milk or cream used in the mix was pasteurized. The product, like whipped cream, is used as a topping for desserts, pies, cakes, sundaes, etc. Instantwhip found its outlet chiefly in distribution to ice cream soda fountains and restaurants, and thence to the ultimate consumer.

On April 3, 1941, plaintiff made an application to the defendant, the Department of Health of the State of New Jersey, for a permit to sell its product in New Jersey. The application was rejected by J. Lynn Mahaffey, Director of said Department of Health, the other defendant in this suit.

Plaintiff brought this action to have the defendants enjoined from interfering with its sale of the product in New Jersey and to have declared as unconstitutional the statute under which defendants claim they derive their authority. It came on for trial on the second amended complaint and answer filed. At the trial the defendants moved to dismiss the second amended complaint on numerous grounds. Since this motion was delayed until the time of final hearing, decision upon it was reserved and the case heard upon its merits. The contentions advanced by defendants in their motion were repeated as part of their defense and are considered herein.

The Department of Health of the State of New Jersey is given the power to govern the production, handling and distribution of milk, cream and milk products pursuant to Title 24, Chapter 10, sections 1, 3, 4, 5, 6 of the Revised Statutes of New Jersey of 1937, N.J.S.A. 24:10–1, 3, 4, 5, 6. The Director of the Department of Health is responsible for the execution and enforcement of these laws. N.J.S.A. 26:2–15.

The pertinent sections of the statute for purpose of discussion follow:

"For the purposes of this article the following definitions are set up:

"*Cream.* a. Cream is a portion of milk which contains not less than sixteen per cent of milk fat and shall not contain any foreign fat or oils.

\* \* \* \* \* \*

"*Milk.* g. Milk is defined to be the lacteal secretion obtained by the complete milking of one or more healthy cows properly fed and kept, excluding that obtained within fifteen days before and five days after calving or such longer period as may be necessary to render the milk practically colostrum free; which contains not less than eleven and one-half per cent of milk solids, and not more than eighty-eight and one-half per cent of watery fluids, or less than three per cent of milk fats.

\* \* \* \* \* \*

"*Milk products.* j. Milk products is defined as cream, ice cream, ice cream mix, sherbets, cream cheese, or other food for human consumption made from milk or cream, or both. \* \* \*" N.J.S.A. 24:10–1.

"No person shall distribute, sell or hold for sale or manufacture into milk products, any milk or cream which has been collected or assembled from a dairy or dairies into any creamery, milk plant or other establishment in which milk or cream are handled, processed or stored or manufactured into milk products or from which milk, cream or milk products are shipped, transported or imported for the purpose of distribution, sale or resale, and no person shall distribute, sell or hold for sale any milk or cream which for any other purpose has been collected or assembled from a dairy or dairies, within this state, unless the person engaged in collecting or assembling such milk or cream shall have first obtained a permit from the state department to engage in

such business, in the manner hereinafter set forth." N.J.S.A. 24:10–2.

"The state department, before it issues any permit under the provisions of this article, shall be satisfied of the following facts:

"a. That the milk, cream and milk products are of the standard and quality required by and

"b. Are produced, handled, processed and transported in accordance with the rules and regulations established by the state department as well as the statutes of this state, with relation thereto.

"c. Unapproved milk, cream or milk products shall not be allowed to enter a milk plant from which milk, cream or milk products are distributed, sold or held for sale in this state." N.J.S.A. 24:10–6.

"All milk, cream or milk products and all milk and cream used in said milk products produced within this state, and all milk, cream or milk products and all milk and cream used in said milk products produced outside of this state and intended for use within this state, shall be subject to inspection at its source of supply, and all dairies, milk plants and transportation equipment wherein such milk, cream or milk products and all milk and cream used in said milk products are produced, handled, processed, manufactured or transported shall likewise be subject to inspection to determine if it, or they, meet the minimum requirements set forth in sections 24:10–15 and 24:10–16 of this title." N.J.S.A. 24:10–11.

"Any milk or cream which fails to meet the minimum requirements set forth in sections 24:10–15 and 24:10–16 of this title shall not be sold, offered or exposed for sale, distributed or held in possession with intent to sell or distribute or for manufacturing into food for human consumption." N.J.S.A. 24:10–14.

"*Cream.* 2. Cream shall not contain less than sixteen per cent of milk fat. \* \* \*" N.J.S.A. 24:10–15.

■■ Defendants contend that this action is brought against the State of New Jersey without its consent in violation of the Eleventh Amendment to the federal Constitution. This is precisely one of the problems considered and determined in the Third Circuit Court of Appeals in the case of Central R. Co. of New Jersey v. Martin, 115 F.2d 968, certiorari denied 313 U.S. 568, 569, 61 S.Ct. 943, 85 L.Ed. 1527, wherein the court said:

"The defendants also urge that these suits were in substance brought against the State of New Jersey without its consent and therefore in violation of the Eleventh Amendment to the federal Constitution. It is clear that the injunctions granted in these cases run against the defendants as state officers and relate to their performance of duties imposed upon them by the statutes of the state. We have seen that their action is in accord with the statutes and the settled practices of the state and that these do not violate the federal Constitution. Under these circumstances it is settled that the suits are in reality suits against the state and therefore not within the jurisdiction of the district court. Worcester County [Trust] Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268. It is only in cases where state officers have attempted to enforce an unconstitutional law or to administer a valid law wrongfully that their acts have been held to be so disassociated from the state for which they purport to act as to permit a suit to be brought against them with respect to those acts. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764; Greene v. Louisville & Interurban R. R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88." 115 F.2d 968 at page 972.

The first issue to consider is whether the statute of New Jersey is constitutional.

On this issue plaintiff contends (a) that the statute in New Jersey conflicts with federal legislation on the same subject and must give way to the paramount right of the federal government to control the subject, (b) that the inclusion of plaintiff's product in the definition of milk products provided for in the statute would render it unreasonable, arbitrary and in violation of plaintiff's constitutional rights, and (c) that the New Jersey statute violates the federal Constitution in that it interferes with, and burdens, the freedom of interstate commerce.

■■ The federal government has set up controls for the importation of milk and cream under the Pure Food & Drug Act, 21 U.S.C.A. §§ 141–149, inclusive, but we can find no conflict between that legislation and the statute in question. Each deals with a distinct phase of regulation covering milk and cream, and the federal regulations do not begin to approach the scope of those enacted by the Legislature of the State of New Jersey. The Supreme Court

has recently said that an "'Intention of Congress to exclude states from exerting their police power must be clearly manifested.'" Allen-Bradley Local No. 1111, etc., v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154, and cases cited therein. Consequently the state is free to legislate upon those matters not dealt with by the federal government. The law in this regard is in a settled state and has been concisely set forth only recently by the Supreme Court in the case of Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 786, 62 S.Ct. 491, 86 L.Ed. 754, as follows:

"This power of Congress [referring to the scope of such power] to exercise exclusive control over operations in interstate commerce is not in dispute here. Nor is this power limited to situations where national uniformity is so essential that, lacking Congressional permission all state action is inadmissible notwithstanding a complete absence of federal legislation. Exclusive federal regulation may arise, also, from the exercise of the power of Congress over interstate commerce where in the absence of Congressional action the states may themselves legislate. It has long been recognized that in those fields of commerce where national uniformity is not essential, either the state or federal government may act. Willson v. Blackbird Creek Marsh Co., 2 Pet. 245, 7 L.Ed. 412; [People of State of] California v. Thompson, 313 U.S. 109, 114, 61 S.Ct. 930, 932, 85 L.Ed. 1219. *Where this power to legislate exists, it often happens that there is only a partial exercise of that power by the federal government. In such cases the state may legislate freely upon those phases of the commerce which are left unregulated by the nation.* But where the United States exercises its power of legislation so as to conflict with a regulation of the state, either specifically or by implication, the state legislation becomes inoperative and the federal legislation exclusive in its application.

When the prohibition of state action is not specific but inferable from the scope and purpose of the federal legislation, it must be clear that the federal provisions are inconsistent with those of the state to justify the thwarting of state regulation." [Emphasis supplied.] 315 U.S. 148, at pages 154–156, 786, 62 S.Ct. 491, at page 495, 86 L.Ed. 754.

We are convinced that the legislation of the State of New Jersey has not been pre-

empted by the federal regulations and that the state statute is a lawful exercise of its police power.

Under the New Jersey statute every person engaged in the manufacture, sale or distribution of a milk product in the State must first obtain a permit to engage in such business. N.J.S.A. 24:10–2. A milk product is defined "as cream, ice cream, ice cream mix, sherbets, cream cheese, or other food for human consumption made from milk or cream, or both." N.J.S.A. 24:10–1j. A fee of $25 is provided to defray the cost of inspection. N.J.S.A. 24:10–5. It provides that the State Department of Health shall be satisfied that the milk, cream or milk product be of the standard and quality required; that it be produced, handled, processed and transported in accordance with established rules and regulations; that unapproved milk, cream or milk products shall not be allowed to enter a milk plant from which milk, cream or milk products are distributed, sold or held for sale in the state. N.J.S.A. 24:10–6. The standards, rules and regulations mentioned aforesaid are set forth in detail. N.J.S.A. 24:10–15, 16, among others. The statute provides for inspection at the source of supply to determine whether the milk, cream or milk product used meets the statutory requirements. N.J.S.A. 24:10–11.

In the case at bar, plaintiff, doing business at 1329 North Randolph Street, Philadelphia, Pennsylvania, on April 3, 1941, made an application for a permit under § 24:10–2 of the Revised Statutes of New Jersey (1937), N.J.S.A. 24:10–2, to receive, ship, store or distribute its product in the State. A representative of the Department of Health of the State of New Jersey visited the plaintiff's premises for purposes of inspection on April 7, 1941. By letter dated April 9, 1941, addressed to the plaintiff at its plant in Philadelphia, sent by defendant, J. Lynn Mahaffey, Director of the State Department of Health of New Jersey, plaintiff's application was rejected for the reason that the milk and cream handled in its plant were obtained from sources which had not been approved by the Department. A proposal by the plaintiff that it divide its operations in its plant, so that during a part of each day the plant would be used for the handling of milk products to be sold and distributed outside of New Jersey and that during the other part of the day, or night, the plant would be used for the handling of New Jersey approved milk products,

after complete sterilization between the two operations, was likewise rejected by the defendant, J. Lynn Mahaffey, for the Department. These facts were corroborated by the testimony on both sides. In effect, the defendant, J. Lynn Mahaffey, the Director of the Department of Health, refused to license the plaintiff unless *all* the milk and cream it used in its plant in Pennsylvania was inspected and approved by the New Jersey authorities under the statute relating thereto.

Plaintiff contends that the statute is discriminatory in that it arbitrarily prevents a plant in Pennsylvania which sells and distributes in many States from selling and distributing its product in New Jersey unless *all* the milk and cream it uses in its plant, including that which is used exclusively for the sale and distribution of its products in other States, is milk and cream which has been approved by the State of New Jersey. It submits that this action on the part of the defendants constitutes an undue burden on interstate commerce in violation of the federal Constitution and that the statute giving rise thereto is unconstitutional.

There is no argument with the established proposition that a state may regulate the milk industry within its confines as an exercise of police power in order to protect the health and safety of its citizens. People of State of New York ex rel. Lieberman v. Van De Carr, 199 U.S. 552, 26 S.Ct. 144, 50 L.Ed. 305. There is substantial basis for the necessity of such legislation. The extension of such regulation to include a manufacturer and distributor of a substance made principally from milk and cream, as the plaintiff's, is within the right of a state to so legislate. It is likewise wholly within the prerogative of a state to define what constitutes milk, cream and milk products for the purpose of so regulating their distribution and sale within the state. It is essential, however, that the legislation and regulation should not be of an unreasonable, arbitrary or discriminatory nature.

The statute in question meets all these requirements. It provides for reasonable standards of quality and an administrative procedure that is fair and just. It extends to every person dealing with the products defined therein within the State and is not directed to certain manufacturers or distributors as individuals or arbitrarily selected groups. It does not totally exclude a product, such as Instantwhip, from the State, but sets up certain prerequisites that must be met before such product may be manufactured, distributed or sold in the State. The regulatory features set forth in the statute are within the scope of legislation by a state in the exercise of its police power for the health, protection and safety of its citizens. It is a valid exercise of such power when applied within the State to the distribution and sale of the product Instantwhip, of which the principal ingredient is milk or cream and which is an item of public consumption. Dangers of contamination of milk and cream are recognized. It is probable that every regulatory statute enacted by a state legislature, under the police power reserved to the respective states by the federal Constitution, affects and burdens interstate commerce to some slight degree, even though they are directed to controlling local conditions. Burdens such as these imposed on interstate commerce are recognized to be incidental and indirect, but necessary. Milk Control Board of Commonwealth of Pennsylvania v. Eisenberg Farm Products Co., 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752.

A presumption exists in favor of the constitutionality of a statute. The laws of a legislative body enacted in pursuance of the police power of the state are presumed to be for the benefit and welfare of the people of the state. It is encumbent upon this plaintiff to refute this presumption by clearly demonstrating a violation of the federal Constitution. Atkin v. Kansas, 191 U.S. 207, 223, 24 S.Ct. 124, 48 L.Ed. 148; Powell v. Pennsylvania, 127 U.S. 678, 684, 8 S.Ct. 992, 1257, 32 L.Ed. 253. The plaintiff has not overcome this presumption and, in fact, has shown nothing to demonstrate any unconstitutional feature of the New Jersey statute. The statute specifically limits its operation to the production, distribution and sale of milk, cream and milk products *within the State of New Jersey* as is to be observed in the very section of the law under attack in this case, as follows:

"No person shall distribute, sell or hold for sale or manufacture into milk products, any milk or cream which has been collected or assembled from a dairy or dairies into any creamery, milk plant or other estab-

lishment in which milk or cream are handled, processed or stored or manufactured into milk products or from which milk, cream or milk products are shipped, transported or imported for the purpose of distribution, sale or resale, and no person shall distribute, sell or hold for sale any milk or cream which for any other purpose has been collected or assembled from a dairy or dairies, *within this state,* unless the person engaged in collecting or assembling such milk or cream shall have first obtained a permit from the state department to engage in such business, in the manner hereinafter set forth. * * *" [Italics supplied.] N.J.S.A. 24:10–2.

■ It is the opinion of this Court that the statute is constitutional and does not violate the Commerce Clause of the federal Constitution. Art. 1, § 8, cl. 3.

■ The complaint also attempts to show that the application of the statute, by the defendant, J. Lynn Mahaffey, to the plaintiff in its shipment of its product in interstate commerce, is violative of its constitutional rights as a resident of the State of Pennsylvania under the Commerce Clause of the federal Constitution. Although the State of New Jersey may impose whatever reasonable restrictions it sees fit in regulating the production, distribution and sale of milk, cream and milk products within its borders for the protection of the general welfare of the people of the State under its police power, it may not interfere with interstate transactions entered into by citizens of other states by means of imposing the prerequisites its statute sets forth in a manner designed to prevent the consummation of such interstate transactions. Specifically, although it can prevent the distribution and sale of a milk product which does not meet the statutory requirements of the State, it cannot interfere with the right of citizens of other states to ship such products into the State when such shipments are made as a consequence of transactions of an interstate character. Once the milk product reaches the State of New Jersey, the authorities have a right of inspection and may find that it does not measure up to the necessary requirements. They may then take action to prevent its further distribution and sale within the State, for at this point it sheds its interstate character and thenceforth its movements in commerce are intrastate in nature. At this time the State may effectively control the product within its confines, even to the point of prohibiting its use by the ultimate consumer.

■ No evidence appearing to the contrary, it must be presumed from the statute that the New Jersey legislature intended to prevent the production, distribution and sale of milk, cream and milk products which would endanger the health of its citizens. This intent can be accomplished by subjecting the product within the State to whatever tests the authorities deem advisable before allowing it to be handled within the State. There is no need to examine the *plaintiff's plant in Philadelphia* to determine whether to allow its product to be used in New Jersey. The object of the statute can effectively be carried out by action within the State.

If a state were to prevent the importation within its borders of milk products which do not meet its statutory requirements, it would in effect be foisting those very requirements upon citizens of other states. Such action would constitute a direct burden on interstate commerce in violation of the federal Constitution, in that it would restrict the commercial activities of those outside of the state who engage in interstate commerce.

This opinion embraces the original package doctrine referred to by both parties in their briefs. We believe that the views set forth aforesaid are in accord with the principles in the cases of Austin v. Tennessee, 179 U.S. 343, 21 S.Ct. 132, 45 L.Ed. 224; Savage v. Jones, 225 U.S. 501, 32 S. Ct. 715, 56 L.Ed. 1182, and Hebe Co. v. Shaw, 248 U.S. 297, 39 S.Ct. 125, 63 L.Ed. 255, wherein the Supreme Court considered similar problems in connection with the original package doctrine.

■ In the case at bar the plaintiff requested from the defendants a permit to distribute and sell its product in the State of New Jersey. This permit was refused and the plaintiff was *advised* by defendant, J. Lynn Mahaffey, that it discontinue sending its products into the State. Plaintiff had no right to demand a license from the State of New Jersey nor had the State any right to insist upon requiring plaintiff to obtain a license before importing into the State. Consequently, any action that might be taken by the defendant, J. Lynn Mahaffey, to interfere with plaintiff's product before it came to rest within the State of New Jersey would have been improper and invalid. Such action, if taken, would

constitute a misuse of authority by the defendant, J. Lynn Mahaffey. In such instance the plaintiff would be justified in bringing an action of this nature based upon the wrongful administration of a valid law. The acts of the defendant, J. Lynn Mahaffey, under such circumstances would then be disassociated from the State of New Jersey as to permit a suit to be brought against him individually with respect to those acts.

 In the case at bar, however, the acts of the defendant, J. Lynn Mahaffey, are not in excess of the authority vested in him by the statute of the State of New Jersey relating to the production, handling and distribution of milk, cream and milk products within the State. In fact, the only evidence appearing in the case of any action on the part of this defendant directed towards this plaintiff is the following letter written by him:

"State of New Jersey
"Department of Health
"Trenton
"April 9, 1941.
"The Aerated Products Co.,
"1329 N. Randolph Street,
"Philadelphia, Pennsylvania.
"Attention: Mr. George Lamb, Secy-Treas.

"Gentlemen:

"A representative of this Department visited the creamery operated by you at the above addresss on April 7, 1941.

"The inspector's report shows that the cream handled in your plant was obtained from sources which have not been approved by this Department.

"Under these circumstances we are unable to approve your application dated April 3, 1941 for a permit to distribute milk products in this State under the provisions of Section 24:10–2, Revised Statutes of New Jersey, 1937.

"The State Treasurer will, therefore, be requested to return to you the sum of $25., which sum was received with your application aforementioned.

"Very truly yours,
"(s) J. Lynn Mahaffey, W.S.
"J. Lynn Mahaffey, M.D.
"IHS:EC Director of Health."

 This letter of April 9, 1941, does no more than refuse to grant the plaintiff a permit under the provisions of the statute of the State, which provisions were not intended to apply to nonresidents. No

requirement appearing therein whereby such persons are required to obtain permits from the State, plaintiff's application was gratuitous. Its rejection by defendant, J. Lynn Mahaffey, is of no effect and may be considered a legal nullity. No injunction should issue to restrain defendant, J. Lynn Mahaffey, from doing something which he had no right to do in any event.

Defendant, J. Lynn Mahaffey, was likewise confronted with an application for a permit by the Aerated Products Company of Newark, a corporation complete in itself and separate and apart from the plaintiff corporation, to sell and distribute Instantwhip in New Jersey, which it would purchase from the plaintiff in Philadelphia. He also declined this application by means of a letter in the following language:

"State of New Jersey
"Department of Health
"Trenton
"April 15, 1941.
"Aerated Products Company
of Newark,
"754 McCarter Highway,
"Newark, New Jersey.

"Attention: Mr. Ernest R. Oldham,
President.

"Gentlemen:

"Your application for a permit required by Section 24:10–2, Revised Statutes of New Jersey under date of April 9, 1941 is on file in this office. The application indicates that you plan to operate in a creamery located at 1329 North Randolph Street, Philadelphia, Pennsylvania, in which plant a creamery business is also understood to be operated by the Aerated Products Company of Philadelphia.

"The application of the latter company for a permit such as that for which you now apply was rejected for cause by this office on April 9, 1941. Representatives of this Department have stated that on the date of your application you proposed a division of the responsibilities for the operations in this creamery so that during a part of each day the plant would be used for the handling of unapproved milk products by the Aerated Products Company of Philadelphia and during the other part of the day or night you would operate the plant for the handling of so-called New Jersey approved milk products.

"Section 24:10–6, Revised Statutes of New Jersey provides that 'Unapproved milk, cream or milk products shall not be

allowed to enter a milk plant from which milk, cream or milk products are distributed, sold or held for sale in this state.'

"It seems fitting, therefore, to inform you that this office will be unable to approve your application for a permit and is unwilling to spend further time in the inspection of your premises until reasonable assurance has been furnished by you to show that the premises covered by your application are to be used only in accordance with the requirements of the laws of this State; furthermore, you are advised to immediately discontinue the distribution of milk products in this State, which said products are obtained from or prepared for distribution in any milk plant or creamery which fails to meet the requirements of the statute aforementioned.

"Very truly yours,
"(s) J. Lynn Mahaffey, W.S.
"J. Lynn Mahaffey, M.D.
"IHS :EC 'Director of Health."

We have heretofore concluded that the defendant, J. Lynn Mahaffey, was under no obligation to act upon the plaintiff's application. The question of his obligation to act upon the application of the Aerated Products Company of Newark, not a party to this suit, is not before the Court.

Consequently, since no action was taken by defendant, J. Lynn Mahaffey, and none threatened, there would appear to be no cause for complaint on the part of the plaintiff whose rights were not violated in any way and therefore no basis for injunctive relief exists.

■ The motion of the defendants to dismiss as to the defendant, Department of Health of the State of New Jersey, is granted for the reason that the Department of Health is the State and suit was brought without its consent. The State Department of Health is an organ of the executive branch of the government of the State, the authority for which is set forth in the statute of the legislature. State v. Mundet Cork Corporation, 126 N. J.Eq. 100, 8 A.2d 105, affirmed 127 N.J.Eq. 61, 11 A.2d 260. Also see Empire Trust Co. v. Board of Commerce, &c., 124 N.J.L. 406, 11 A.2d 752; Strobel Steel, &c., Co. v. State Highway Comm., 120 N.J.L. 298, 198 A. 774. The functions of this organ are controlled by the members of the State Board of Health, an advisory board, who, incidentally, were not named as defendants in this action, and the Director of the

Department, the defendant, J. Lynn Mahaffey.

■ The State Department of Health as an entity is the State itself. The defendant, J. Lynn Mahaffey, as the Director of the Department of Health, is the individual who exercises the functions of the organ, and as to him the motion to dismiss must be denied for the same reason.

This Court has proper jurisdiction over the defendant, J. Lynn Mahaffey, individually, and, based on the merits, concludes that as to him the evidence set forth does not constitute a cause of action.

In conclusion the relief sought by the plaintiff must be denied for the reason that the statute in question is constitutional and does not impose upon nonresidents requirements which plaintiff ascribes to it and there is no wrongful exercise of authority under the statute which would serve as a basis for injunctive relief.

Defendants also assert a number of other reasons for the objection that the Court lacked jurisdiction. In the light of the disposition of the points above discussed, no further comment is necessary upon the other grounds.