## Excess Insurance Brokers' Licenses

UMSTED, Deputy Attorney General, May 20, 1947.—
You inquire upon what terms you may grant an excess
broker's license to a resident applicant who desires to
place fire and marine insurance exclusively on inter-
state and foreign commerce risks with insurance car-
riers not authorized to do business in Pennsylvania.
You state that the applicant does not now hold a
domestic fire and marine broker's license.

To answer your question requires an interpretation
of section 624 of the Insurance Department Act of
May 17, 1921, P. L. 789, as amended by the Act of
May 1, 1929, P. L. 1186, 40 PS §254, which we quote
in full:

"The Insurance Commissioner may issue a license,
revocable at any time, permitting the person, copart-
nership, or corporation named therein to act as a broker
to procure for his clients policies of fire or marine
insurance from companies, associations or exchanges
not authorized to do business in this Commonwealth.
Before any fire or marine insurance excepting how-
ever marine insurance on vessels and vessel property
engaged in interstate or foreign commerce shall be pro-
cured under or by virtue of said license, there shall
be executed and filed with the Insurance Commissioner
by the licensed broker, and also by the party desiring
the insurance, an affidavit, which shall have force and

effect for one year only from date thereof, setting forth that the party desiring insurance is, after diligent effort, unable to procure the amount required to protect the property owned or controlled or entrusted to him, from fire or marine insurance companies,—mutual insurance companies, associations, or exchanges excepted,—duly authorized to transact business in this Commonwealth. The licensed broker procuring or delivering policies in such unauthorized companies, associations, or exchanges shall keep a separate account thereof, open at all times, without notice, to the inspection of the Insurance Commissioner, showing the exact amount of insurance placed, giving the name of the insured, the location of the insured property, the gross premium mentioned in the policy, the name of the company, association, or exchange issuing the contract, and the number, date, and term of the policy. Each policy shall have written or printed on the outside of it the name of the licensed broker who obtained the same and introduced it into the Commonwealth, and after his name shall appear the words 'licensed excess insurance broker.' Nothing in this section shall be so construed as giving any such licensed broker authority to act as agent for, or to in any way represent, any such unlicensed company, association, or exchange in this Commonwealth."

From the foregoing, it would appear that one not licensed as a fire and marine insurance broker in this State could hardly be eligible to receive an excess broker's license to procure fire and marine insurance on local risks from carriers unauthorized to write such insurance here. For in order lawfully to obtain such coverage the excess broker must make an affidavit that after diligent effort similar insurance cannot be obtained in the amount required from a stock, fire and marine insurance company authorized to do that business in Pennsylvania. The solicitation essential to

justify the affidavit would in itself require a broker's license.

However, in the case of fire and marine insurance on interstate and foreign risks from unauthorized companies, no affidavit is required nor is there, accordingly, an obligation imposed upon the excess broker which would necessitate his soliciting domestic companies for the amount of insurance required to protect vessels and vessel property engaged in interstate and foreign commerce. On the other hand, there is nothing in this section which would indicate that the legislature intended to break down the classification of excess brokers into two groups, that is, those who would deal exclusively in interstate and foreign insurance and those who would deal in domestic insurance. Consequently, it must be presupposed that the legislature intended all excess brokers to be qualified to deal in all the insurance authorized by this section of the Insurance Department Act.

As has been pointed out above, in order to do domestic insurance business with unauthorized companies, an excess broker would necessarily have to be qualified as a regular fire and marine broker. Therefore, even though he intends to confine his activities to insuring risks in interstate and foreign commerce, he would nevertheless have to meet the qualifications essential for writing domestic risks. They are not severe.

Section 622 of the Insurance Department Act of 1921, 40 PS §252, provides that licenses may be issued to persons 21 years of age, partnerships and corporations to sell insurance other than life insurance when the applicant shall answer in writing and under oath interrogatories prepared by the Insurance Commissioner, when he is vouched for by endorsement of at least two agents or by the officers of an insurance company, association or exchange, acquainted with the applicant, to the effect that the applicant is of good busi-

ness reputation, and has experience in underwriting, other than soliciting, and is worthy of a license. The Insurance Commissioner himself must be satisfied that the applicant is worthy of a license and is familiar with the provisions of the insurance laws of the Commonwealth of Pennsylvania before the license may issue.

The very fact that the legislature has specifically enumerated these preliminary requirements for a general broker's license is indicative of the fact that it did not contemplate that anyone other than a licensed broker would apply for an excess broker's license. Elsewise it would have been as meticulous in spelling out qualifications in section 624 of the act as it was in specifying them in section 622. If section 624 were construed without reconciling it with section 622, the unreasonable result would follow that excess brokers would not need to be 21 years of age, would not have to be vouched for and would not have to familiarize themselves with the provisions of the insurance laws, or be worthy of a license—a result which would be absurd and unreasonable and, therefore, to be avoided under the rule of construction set forth in section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552.

But the law should never be construed to require a useless thing. If then an applicant for an excess broker's license meets all the qualifications imposed by section 622 of the Insurance Department Law as prerequisites for granting a broker's license, and also meets the additional requirements imposed by section 624 upon excess brokers, he should be granted an excess broker's license without first having to obtain a regular domestic broker's license.

Whether any Pennsylvania license at all is necessary to enable a person to obtain fire and marine insurance on interstate and foreign risks from companies not

authorized to write fire and marine insurance in this State appears to have been decided in the affirmative by the Supreme Court of the United States in Robertson v. California, 328 U. S. 440, 66 S. Ct. 1160 (1946). There it was held the State of California could license surplus line brokers;* that reasonable licensure requirements placed no undue burden upon interstate commerce contrary to article I, sec. 8, of the Constitution of the United States. Mr. Justice Rutledge, speaking for the court at 328 U. S. 450, 66 S. Ct. 1166, says:

". . . In the absence of any showing that it is administered arbitrarily, the requirement that the license shall issue only after a finding of trustworthiness and competence by the commissioner cannot be taken to be other than an appropriate means of safeguarding the public against the obvious evils arising from the lack of those qualifications. California v. Thompson, supra. [313 U. S. 109, 110, 61 S. Ct. 930, 931, 85 L. Ed. 1219]. Considered separately from any relationship to other sections of the Code, therefore, the prescribed conditions for securing the surplus line broker's license are no more invalid than those which must be fulfilled to secure the general agent's license . . ."

We are of the opinion and you are, therefore, advised, if the applicant before you for an excess broker's fire and marine license meets the qualifications imposed under section 622 of The Insurance Department Act of May 17, 1921, P. L. 789, 40 PS §252, he may be granted an excess insurance broker's license to conduct the business indicated in section 624 of the same act as amended by the Act of May 1, 1929, P. L. 1186, 40 PS §254, and although there is no authority under the provisions of this section to issue a limited excess

---

* Under the California Insurance Code, chapter VI, Surplus Line Brokers, sections 1760-1779, surplus line brokers generally correspond and are analogous to excess brokers in Pennsylvania.

broker's license you may, nevertheless, at the request of the applicant, confine his authority to that portion of excess insurance to which the applicant proposes limiting himself.