BUDGET MARKETING, INC., James
Watson, Richard Prochnow,
Movants,

v.

COMMONWEALTH of Kentucky, ex rel.,
Robert A. STEPHENS, Attorney
General, Respondent.

Supreme Court of Kentucky.

Sept. 11, 1979.

Rehearing Denied Oct. 30, 1979.

Robert C. Ewald, Wyatt, Grafton & Sloss, Louisville, for movants.

Robert F. Stephens, Atty. Gen. by Ruth H. Baxter, Asst. Atty. Gen., Consumer Protection Litigation Unit, Frankfort, for respondent.

LUKOWSKY, Justice.

The question presented is whether the legislature can constitutionally require nonresidents engaged in the business of soliciting orders, via interstate telephone, for magazines on a subscription basis, the delivery of which is contingent on a future event, to register in each county in the Commonwealth in which they solicit. The trial court and the Court of Appeals answered the question yes. We affirm.

1. KRS 271A.520(2) provides in part:

"Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:

. . . . .

(f) Soliciting or procuring orders, whether by mail or through employes or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts; . . ."

The authority of Budget to transact business in this Commonwealth is not questioned. Consequently, *Michigan Wisconsin Pipeline Co. v. Commonwealth*, Ky., 474 S.W.2d 873 (1972) is inapposite.

2. SUBSCRIPTION SALES OF PRINTED MATERIAL

Budget Marketing, Inc. is an Iowa corporation which has no certificate of authority to transact business in this Commonwealth.[1] Watson is the sole proprietor of Budget Marketing of Dixie, located in Memphis, Tennessee, and a franchise of Budget. Prochnow is the sole proprietor of Budget Marketing of the South, located in Atlanta, Georgia, and a franchisee of Budget. Movants are engaged in the business of soliciting magazine subscription sales through the use of interstate telephone lines. Movants use telephone operators to call into Kentucky communities over some twenty-one wide area telephone service [WATS] lines to solicit orders for magazine subscriptions. When telephone calls result in an order, subscription sales contracts and payments are transmitted back and forth by mail. Thereafter magazines are delivered by mail.

Budget has maintained strict control over its franchisees. It designates territories, manages the subscription service, accepts or rejects each subscription sale contract solicited, and receives a thirty-two per cent commission on sales. We do not find it difficult, therefore, to conclude that the franchisees represent Budget as they engage in the business of subscription sales solicitation in the Commonwealth.

■ Analysis of the case requires the construction of KRS 367.510–367.515.[2]

367.510. "Solicitor" defined.—As used in KRS 367.513 to 367.530 unless the context requires otherwise, "solicitor" means any person engaged in the business of soliciting orders for magazines, periodicals, encyclopedias, books, Bibles, or other printed matter or material on a subscription basis and payable on instalments or on a cash basis or by contract or note, the delivery of which magazines, periodicals, encyclopedias, books, Bibles, or other printed material is contingent upon a future event, such as a down payment or one or more instalment payments in any county in this state.

367.513. Registration of solicitor of subscription sales of printed material—Information required.—Beginning July 1, 1974, every solicitor shall register annually with the county clerk of the county in which such solicitations are to occur and shall furnish to the county clerk the following information: (1) Whether solicitations shall be made in person or by telephone, and if made in per-

Movants argue that the statutory provisions are susceptible to such distortion as to allow an arbitrary application. It is the duty of this court to "draw all inferences and implications from the act as a whole and thereby, if possible, sustain the validity of the act and expound it." *Folks v. Barren County,* 313 Ky. 515, 519–20, 232 S.W.2d 1010, 1013 (1950).

 By its terms KRS 367.513 only applies to "solicitors," a word which the legislature has narrowly defined as "any person *engaged in the business* of soliciting orders . . . in any county in this state." The word "person" may of course include a corporation as well as an individual. KRS 446.010(26) (Supp.1978); *See Kentucky State Bar Assoc. v. Tussey,* Ky., 476 S.W.2d 177 (1972); KRS 367.110(1). Further, the language does not apply to the physical *activity* of soliciting orders for printed materials. Instead, the statute is couched in terms which apply it to those persons engaged in the *business* of soliciting orders, such as the movants, but not to each telephone operator of the solicitor. The statute would not apply to publishers seeking to sell their own product because they are in the business of publishing not soliciting. On the other hand, a person engaged in the business of solicitation cannot escape the reach of KRS 367.510–367.515 merely because of a collateral business venture.

 The statutory definition is further narrowed to apply to such persons soliciting orders for the subject materials "on a subscription basis. . . ." KRS 367.510. The statute looks to a continuing relationship brought about by the solicitation. Individual sales of books, magazines, and the like are not included. This continuing relationship through a subscription is restricted by the language that "the delivery of which magazines . . . is contingent upon a future event, such as a down payment or one or more instalment payments . . ." KRS 367.510. Therefore, even where a continuing relationship has arisen the "solicitor" appellation will not apply if the printed material is delivered before payment is required or C.O.D.

 It is also evident that KRS 367.510 must be read with KRS 367.513 and 367.515. Indeed, both the registration provisions and the definition section were originally parts of the same act of the legislature. 1972 Kentucky Acts, ch. 55. Read together it is clear that the registration plan also extends only to solicitations conducted *in person* or *by telephone.* The statute is directed at face to face or tongue to ear confrontations. The statute does not apply to solicitations through the use of the mails or the advertising media. The statute, by requiring identification of solicitors, is designed to hopefully prevent, or at least insure a meaningful local remedy for, the fraud which may result from the pressure inherent in a *conversation* with a hard selling and well-rehearsed salesman.

---

son, shall give an adequate description, including state of issue and license number, of any motor vehicle to be used in soliciting sales of printed material, or the telephone number from which telephone solicitations shall be made;

(2) His name and social security number;

(3) The mailing address and telephone number of his permanent residence; and

(4) The name, address and telephone number of the company or organization he represents, if any.

367.515. Registration fee—Display of registration receipt—Exceptions.—(1) Upon registration, every solicitor shall pay the county clerk a five dollar ($5.00) service fee and the county clerk shall issue the solicitor a numbered receipt to be effective for a period of one (1) year from the date of registration.

(2) Prior to actual solicitation, the solicitor shall display to the potential purchaser the registration receipt issued by the county clerk of soliciting in person or cite to the potential purchaser the number of registration receipt if soliciting by telephone.

(3) The provisions of KRS 367.513 to 367.-530 shall not apply to minors soliciting orders for articles mentioned in KRS 367.510 when such sales are made for the sole purpose of obtaining funds for a school band, club or other organization and such sales are approved in writing by the superintendent of the school system at which the minors are students. The written approval of the superintendent shall identify the product or products being sold, the solicitors to be involved and the duration of sales and shall be filed with the county clerk.

The statute provides the consumer with a means to determine at the outset whether the solicitor actually is who he claims to be by checking the registration receipt number of the solicitor with the local county clerk. The consumer has available this means of readily checking the credentials of personal solicitors because of the minimal registration requirements of KRS 367.513 and the accompanying requirements of KRS 367.515 that the solicitor identify himself before the solicitation begins by displaying the registration receipt or by reciting over the telephone its number to the target consumer.

The itinerant salesman was with us prior to the Reformation. Ever since there have been continual governmental attempts to protect citizens from the unscrupulous members of this trade.[3] In *Breard v. City of Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), the police power of the state to prohibit both solicitors and pedlars from plying their trade without the prior invitation of the occupant was upheld with the comment "Unwanted knocks on the door by day or night are a nuisance, or worse, to peace and quiet." The invention of the automatic dialing telephone and the maintenance of telephone service by almost all Americans would permit the expansion of the quoted language to include "unwanted calls on the telephone, by day or by night." It is apparent from the type and number of electronic facilities leased by movants that their telephonic intrusion into each county in which they choose to solicit is systematic, comprehensive and exhaustive.

However, the statute involved here does not attempt to ban uninvited solicitations. It simply seeks to provide easy access to the identity and address of the personal solicitor for the benefit of the consumer. The utility of the Kentucky long arm statute, KRS 454.210 (Supp.1978), is negated if the consumer who is the potential plaintiff in an action involving the solicitation contract cannot identify or locate the subscription

solicitor who knocks on the door or rings the telephone today and then is seen or heard no more. *See Murphy v. Erwin-Wasey, Inc.*, C.A.1st, 460 F.2d 661 (1972).

The burden imposed by the statute is light. The solicitor need only annually supply his name, social security number, his mailing address, telephone number and identity of any organization he may represent. If he uses an automobile to solicit, he must identify it. If he uses a telephone, he is to give its number. There are no onerous or forbidding qualifications imposed on the solicitor. The solicitor need not share the cost of maintaining a central registration system which would make such information available statewide. Registration is required only in the counties in which solicitations are to be made.

The importance of local notification by filing has been recognized frequently by the legislature. For example, security interests in consumer goods under article nine of the UCC must be filed in the office of the clerk of the county in which the debtor resides, the place where the property would most likely be found. KRS 355.9–401 (Supp. 1978).

It is certainly clear as well that the $5.00 service fee imposed by KRS 367.515 is not a revenue measure but is only adequate to cover the cost of maintenance of the local notification procedure. *See California v. Thompson*, 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219 (1941) where a $1.00 license fee for transportation agents was found not to be a revenue measure. It is a sad commentary, but we must note, that the ravages of inflation have made a 1941 dollar at least the equivalent of five 1979 dollars.

▆ Finally, it is obvious that this statute applies to both resident and nonresident solicitors. The statute's scope is measured only by the number of counties in which any solicitor wishes to engage in his business. He need only register in the counties which comprise the territory in which he intends to solicit. The clerical and financial

---

**3.** *See Generally Emert v. Missouri*, 156 U.S. 296, 15 S.Ct. 367, 39 L.Ed. 430 (1895) for an overview of the regulation of transient sellers with references to statutes from the time of Henry VIII.

impact of the required registration bears a rational relationship to the breadth of the business conducted. Consequently, this statute does not discriminate against non-residents. *See California v. Thompson, supra.*

Movants argue that the statute requiring registration of solicitors violates the commerce clause of the federal constitution. In view of the foregoing construction of this statute we find no violation.

The United States Supreme Court recently restated the guiding principles to be followed where a state's regulatory interest touches interstate commerce:

> "Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and whether it could be promoted as well with a lesser impact on interstate activities."

*Raymond Motor Transportation, Inc. v. Rice,* 434 U.S. 429, 441–42, 98 S.Ct. 787, 794, 54 L.Ed.2d 664, 675 (1978) (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178) (1970) (citations omitted).

The statute here is a valid exercise of the police power of the Commonwealth in the protection of its citizens which "does not infringe the national interest in maintaining the free flow of commerce and in preserving uniformity in the regulation of the commerce in matters of national concern." *California v. Thompson, supra,* 313 U.S. at 116, 61 S.Ct. at 934, 85 L.Ed. at 1223.[4] Budget Marketing, Inc. and its franchisees, James Watson and Richard Prochnow, are solicitors within the meaning of KRS 367.-510. Each must comply with KRS 367.513 and 367.515 in each county in which he chooses to solicit.

The decision of the Court of Appeals is affirmed, the judgment of the circuit court is affirmed in part and reversed in part and the case is remanded to the circuit court for further proceedings consistent with the opinion of the Court of Appeals.

All concur.

---

4. The Kentucky cases cited by movants involving attempts at regulation and taxation by municipalities are inapposite. *See, e.g., Olan Mills v. City of Elizabethtown,* Ky., 269 S.W.2d 201 (1954).