Merrimack, }
June, 1898. }

PITTSFIELD *v.* EXETER.

When stock of an insurance company organized under the laws of and doing business in this state is in the possession of an administrator, the tax thereon is to be apportioned between the state and the town in which such administrator resides; and such town is entitled to a share of the tax upon stock of railroad corporations in this state so held, if the selectmen have taken an invoice of the stock and transmitted to the state treasurer a statement thereof, as required by P. S., *c.* 57, *s.* 2.

An apportionment of the railroad and insurance taxes by the state treasurer is a judicial act which cannot be collaterally attacked; but a party aggrieved by his decision may have relief by a writ of *certiorari.*

ASSUMPSIT, for money had and received. Facts agreed. John J. Bell, late of Exeter, died August 22, 1893, owning shares of the capital stock of certain insurance and railroad corporations in this state. George E. Kent of Pittsfield was appointed administrator of his estate, September 13, 1893, and, as such, has held the stocks ever since and received the dividends upon them. Bell's widow and children have resided in Exeter since his decease. The selectmen of Pittsfield, in the years 1895 and 1896, and the selectmen of Exeter in the years 1894, 1895, and 1896, seasonably took an invoice of the railroad stock and transmitted a statement thereof to the state treasurer, as required by the statute. The state treasurer, without a notice to or a hearing of Pittsfield, apportioned and paid to Exeter each year the portion of taxes pertaining to both the insurance and railroad stocks. Pittsfield demanded the same of the state treasurer in 1895 and 1896, and of Exeter before beginning this action.

*Burnham, Brown & Warren,* for the plaintiffs.

*Eastman & Young,* for the defendants.

CHASE, J. Prior to the enactment of the Revised Statutes, railroad stock, like bank stock and other dividend paying stocks excepting that of manufacturing corporations, was taxable to the owner in the town in which he resided. Laws 1833, *c.* 108, *ss.* 1, 2. If the owner had died, it was taxable to his widow, any of his children, his heirs, or any other person who would consent to be considered in possession of it; and if no one would so consent, it was taxable to his heirs generally. Laws, *ed.* 1830, *p.* 556, *s.* 10. In 1840, provision was made by which

selectmen could procure the appointment of administrators upon estates having personal property subject to taxation, if the persons interested in the estates refused or neglected to have administration taken out. Laws 1840, *c.* 550, *s.* 2. When there is an administrator, he has the legal title to the personal property of the deceased. *Ladd* v. *Wiggin,* 35 N. H. 421, 430.

By the Revised Statutes, stocks in all corporations in this state except manufacturing and railroad corporations, if held by an administrator, were taxable to him in the town in which he resided if in the state, and if not, in the town in which the person beneficially interested in them resided. R. S., *c.* 39, *s.* 3; *Ib.,* *c.* 40, *s.* 12. A special annual tax of one per cent was imposed upon the capital stock of railroad corporations expended within the state, to be assigned and distributed,— one fourth to the towns in which the railroads were located in proportion to the capital stock expended therein for buildings and the right of way; three fourths of the portion received upon stock owned in the state to the towns in which it was owned on the first day of April, in proportion to the ownership; and the remainder to the state. R. S., *c.* 39, *ss.* 4, 5, 6; Comm'rs' Rep. R. S., *c.* 39.

This scheme of taxation, with modifications in certain particulars, has continued to the present time. Laws 1843, *c.* 34, *ss.* 2, 3, 4; C. S., *c.* 41, *ss.* 4, 5, 6; G. S., *c.* 57; G. L., *c.* 62; P. S., *c.* 64. The provisions of the statutes and the circumstances under which they were enacted show that a town's right to taxes assessed upon property represented by railroad stock depends upon the same conditions as its right to assess taxes upon bank and other kinds of corporate stock. The change made in the statutes in 1843, like that made in 1864 in the statutes relating to the assessment of taxes upon deposits in savings banks (*Petition of Savings Bank,* 68 N. H. 384), mainly affected the method of taxation, and did not take from towns taxes to which they were entitled under the old system, nor distinguish their right to taxes assessed upon railroad stock from their right to taxes assessed upon bank and other stocks. "Owned," in the provision relating to the distribution of railroad taxes (R. S., *c.* 39, *s.* 5, *par.* 2; P. S., *c.* 64, *s.* 13, *par.* II),was used in the same sense as the word "owner" in the provision which requires that stock in corporations shall be taxed to the owner in the town in which he resides, if in this state. R. S., *c.* 40, *s.* 4; P. S., *c.* 56, *s.* 7.

A similar change was made in 1887 in the method of assessing taxes upon the property of fire insurance companies, and the foregoing observations apply equally to this change.

It follows from these considerations, that the recent decision in *Kent* v. *Exeter,* 68 N. H. 469,— that bank stock held by an administrator is taxable to him in the town in which he resides,

although the heirs-at-law of the estate reside in another town,—
is authority for the holding in this case that the plaintiffs were
entitled to the portions of the railroad and insurance taxes of
1895 and 1896 that were paid to the defendants. They were
not entitled to a portion of the railroad taxes of 1894, because
their selectmen neglected that year to take an invoice of the
shares of railroad stock owned by the administrator and to trans-
mit a statement thereof to the state treasurer. P. S., c. 64,
s. 16.

The question remains whether the plaintiffs can recover in
this action the money to which they were entitled, but which
has been paid to the defendants. The duty of apportioning
railroad and insurance taxes to towns is placed upon the state
treasurer. R. S., c. 39, s. 5; P. S., c. 64, s. 13; *Ib.*, c. 65, s. 10.
The officers of corporations are required to furnish him informa-
tion concerning the ownership of their stocks. R. S., c. 39, s. 6;
P. S., c. 64, s. 5; *Ib.*, c. 65, s. 8. Since 1860, selectmen have
been required to take an invoice of the shares of railroad stock
owned by inhabitants of their towns, and seasonably to transmit
to the state treasurer a statement under oath, giving the names
of stockholders and the number of shares owned by each. Laws
1860, c. 2353, s. 2; P. S., c. 57, s. 2; *Ib.*, c. 64, s. 16. If the
statements received from these different sources disagree, it is
made the duty of the state treasurer to adjust the "discrepan-
cies . . . in such manner as shall be satisfactory to him" (Laws
1860, c. 2353, s. 3), or, in other words, to "determine upon the
evidence to what town the shares . . . shall be credited."
P. S., c. 64, s. 17. The original act provided that he should make
an apportionment to a town upon receiving from the selectmen
satisfactory evidence that the stock to which it pertained was
owned in the town on the first day of April. R. S., c. 39, s. 5,
*par.* 2. There is no special provision of this kind relating to
the apportionment of insurance taxes, but as the apportionment
cannot be made without determining the question of ownership
of the stock, authority to determine it is implied. In perform-
ing the duty, the treasurer acts in a judicial capacity. The ques-
tion that was before the treasurer in this case in all respects
resembled the one that was before the selectmen of Exeter when
they assessed the taxes that were under consideration in *Kent* v.
*Exeter, supra;* and his act in apportioning the taxes to Exeter
was equally a judicial act. *Edes* v. *Boardman*, 58 N. H. 580;
*Boody* v. *Watson*, 64 N. H. 162; *Bradley* v. *Laconia*, 66 N. H.
269. The decision cannot be attacked collaterally in the one
case more than in the other. Although the law does not
give a party aggrieved by a decision of the state treasurer a
right of appeal, as it does to one aggrieved by a decision of
selectmen (P. S., c. 59, s. 11), it affords an ample remedy in

the writ of *certiorari*. Whether the plaintiffs should have the writ in this case depends upon the decision of questions of fact which cannot be made here.    *Grand Trunk Railway* v. *Berlin*, 68 N. H. 168.

*Case discharged.*

All concurred.