STATE OF MAINE
*vs.*
FRANCIS D. NAGLE

York.    Opinion, October 7, 1952.

*Alexander A. LaFleur, Atty. General,*
*Raymond E. Jensen, Asst. Atty. General,* for plaintiff.

*Berman, Berman and Wernick,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MERRILL, J. On report. The respondent was indicted for transporting asbestos shingles for hire as an interstate carrier on a highway within the State of Maine "without having then and there authority from the Maine Public Utilities Commission permitting such transportation for hire," he "being then and there authorized by the Maine Public Utilities Commission to act as an interstate carrier only for the purpose of transporting household goods for hire,".

The respondent operated a motor truck as an employee of James J. Keating, Jr., an interstate carrier by motor vehicle. Keating had been issued a permit by the Interstate Commerce Commission as a common carrier over irregular routes. By his permit ICC80416 Keating was limited to the transportation of "Household goods, as defined in Practices of Motor Common Carriers of Household Goods, 17 M.C.C. 467," "Between Stoneham, Mass., and points and places within ten miles thereof, on the one hand, and, on the other, points and places in Connecticut, Maine, Massachusetts, New Hampshire, New York, and Rhode Island," and "Between Medford, Mass., and points and places in Massachusetts within ten miles of Medford, on the one hand, and, on the other, points and places in Maine, Vermont, New Hampshire, and Connecticut traversing Rhode Island for operating convenience only."

Upon application to the Maine Public Utilities Commission the Commission granted a permit to Keating as a

"motor vehicle interstate carrier, authorizing the operation of the motor vehicles described therein, over and upon the highways in the State of Maine as set forth in Schedule "A" * * * * as provided in Chapter 44, R. S. of Maine, 1944, as amended." Schedule "A" was as follows:

### "SCHEDULE 'A'

Showing highways in the State of Maine over which James J. Keating, Jr. is authorized to operate as an interstate carrier

Household goods between Medford, Mass., and points and places in Massachusetts within ten miles of Medford on one hand, and points and places in Maine, on the other."

A plate permit was also issued by the Maine Public Utilities Commission covering the particular truck used in the operation here under examination.

The respondent on the day charged, as an employee of Keating, transported asbestos shingles for hire in interstate commerce, by motor vehicle, on the highway in this State named in the indictment, which highway was a highway covered by the permit issued to Keating.

The case was reported upon the foregoing facts with the stipulation that "if the court shall find the respondent guilty as charged in the indictment, the case is to be remanded to the Superior Court for sentence of the respondent. If, however, the court shall find the respondent not guilty as charged in the indictment, the case is to be remanded to the Superior Court and nolle prosequi to be entered by the prosecution."

The indictment against the respondent is based upon an alleged violation of R. S. (1944), c. 44 Secs. 22 and 30, as amended. At the time of the alleged violation said Section 22, as amended by P. L. 1949, Chap. 263, read as follows:

"In order that there may be proper supervision and control of the use of the highways of this state, every person, firm or corporation transporting freight or merchandise for hire by motor vehicle upon the public highways between points within and points without the state is required to obtain a permit for such operation from the Commission. Application for such permits shall be made in the manner and form to be prescribed by the Commission in its regulations, and such permits shall issue as a matter of right upon compliance with such regulations and payment of fees, unless the Commission shall find that the condition of the highways to be used is such that the operation proposed would be unsafe, or the safety of other users thereof would be endangered thereby."

So much of R. S. (1944), Chap. 44, Sec. 30, Subsection I, as amended by P. L., 1949, Chap. 390, as is applicable hereto reads as follows:

"I.   Any person, firm or corporation or any officer, agent or employee of any corporation who violates, orders, authorizes or knowingly permits a violation of any of the provisions of sections 17 to 29, inclusive, or of any rule, regulation or order made or issued by the commission pursuant to the authority of sections 17 to 30, inclusive, shall be punished by a fine of not less than $10, nor more than $500, or by imprisonment for not more than 11 months, or by both such fine and imprisonment."

The respondent was, at the time he was performing the transportation for which he was indicted, an employee and driver for James J. Keating, Jr.

Subsection IV of said Section 30 reads as follows:

"Any driver of any motor vehicle which is being unlawfully used by any person, firm, or corporation in carrying on the business of a common carrier, or of a contract carrier, or of an interstate carrier without a certificate or permit, shall be liable to the penalties provided in this section."

The respondent himself having no permit from the Public Utilities Commission of Maine, it follows that for the purposes of this case, his guilt or innocence must depend upon the rights, permits and privileges, if any, of his employer, James J. Keating, Jr.

It is the position of the respondent that the Commission had *no express authority* to insert any limitation in permits issued to those engaged in interstate commerce, and that its *implied authority*, if any, to insert limitations therein was confined to those insuring that the condition of the highways to be used would be safe for the operation proposed and to make sure that the safety of other users of the highways would not be endangered thereby. The respondent further contends that the Commission had no right to insert in his employer's permit the provision limiting the transportation to household goods; that such provision was an attempt to regulate interstate commerce with respect to such transportation; and that, as such, it is illegal, being in violation of the commerce clause of the Constitution of the United States. U. S. Const. Art. I, Sec. VIII, Par. 3.

Interesting and provocative as a determination of these questions might be, a decision of one or both of them in favor of the respondent would not be decisive of the real issue in this case.

This is not a proceeding to obtain a permit denied or to broaden the scope of the one in fact issued, but it is a prosecution for operating without a permit covering the transportation in question.

The issues here are, first, could the State require a permit for the transportation in question; second, if that question be answered in the affirmative, had the respondent or his employer the permit required by law.

The foregoing issues raised by the respondent might well be germane to a decision of whether or not the Public Utilities Commission of Maine should have issued or could have been compelled to issue a permit covering the transportation here involved. Their decision, however, has no bearing upon whether or not the permit actually issued is broad enough to cover the transportation in question. *The decision of this case depends not upon the kind of permit the respondent or his employer was entitled to receive, but upon that which was in fact received.* Even though the respondent's employer might have compelled the issue of a permit broad enough to cover the transportation in question, a question upon which we neither express nor intimate an opinion, unless and until he does so, the fact remains that unless the permit which he has received is broad enough to cover the transportation of the goods actually transported, he and his employee are transporting goods in interstate commerce without the required permit.

In the instant case the respondent's employer had not received a permit broad enough to cover the transportation in question. He had a permit to transport household goods. He had no permit to transport any other goods. This permit was only affirmative authority to transport the specific goods named therein. It contained no prohibition of the transportation of other goods. As to the goods transported, to wit, the asbestos shingles, the permit neither gave nor denied the right to transport the same. It was entirely silent with respect thereto.

Even if it be conceded for the sake of argument that the Public Utilities Commission of Maine was not authorized to restrict the employer to the carriage of household goods in interstate commerce, or if so authorized by state law such restriction would be an illegal interference with interstate commerce (questions upon which we neither ex-

press nor intimate our opinion), the fact remains that it did not issue the respondent's employer a permit to transport anything other than household goods in interstate commerce.

Nor can the permit in question be construed as a permit to transport goods generally for hire in interstate commerce with a severable illegal restriction upon such transportation. The respondent's employer had no permit from the Public Utilities Commission of Maine to transport goods in interstate commerce generally, nor did he have a permit to transport the goods which were actually being transported. *The situation with respect to the transportation involved is the same as though he had no permit whatever from the Public Utilities Commission of Maine as required by R. S. (1944), Chap. 44, Sec. 22 as amended.*

Subject to some exceptions, it is a sound general principle of law that when a permit or license to do an act is required by law, the wrongful refusal to issue such permit or license will not justify the performance of the act. The remedy of the applicant is to compel the issue of the permit or license. The applicant is not permitted to take the law into his own hands and engage in the action for which the permit or license is required. See 53 C. J. S. 727, Sec. 68, 37 C. J. 267, Sec. 158 and cases cited in note 91; 33 Am. Jur. 395, Sec. 87; and note in Annotated Cases 1917B 147.

The case of *State* v. *Stevens,* 78 N. H. 268, 99 Atl. 723, 725, L. R. A. 1917C, 528 is illuminating. In that case it was claimed that the insurance commissioner wrongfully refused a license to a lightning rod agent who had applied therefor. With respect thereto the court said:

"The duty imposed upon the insurance commissioner upon application to him for the license of an agent is judicial in its nature; he is to pass upon the question whether the manufacturer's appointee is a suitable person.

If, acting under an erroneous view of the law, the insurance commissioner wrongfully refused to issue the license, the defendant had an ample remedy in the writ of certiorari.

The judgment of the commissioner that the license ought not to be granted cannot be attacked, collaterally. Pittsfield v. Exeter, 69 N. H. 336, 338, 41 Atl. 82. The defendant would be no better off if such attack were permitted. His claim is that he was entitled to a license, not that he had a right to sell without a license. If the correctness of the defendant's claim were conceded or established, he would still be guilty of a violation of the statute— selling without a license. *A wrongful refusal of a license is not equivalent to a license.* (Emphasis ours.)

Instead of prosecuting by proper proceedings his claim of right to a license, the defendant chose to disregard the law and must submit to the penalty."

In *State* v. *Jamison*, 23 Mo. 330, the court said:

"It is the *granted license* that justifies a party in carrying on the business of a 'dram-shop keeper,' and therefore, even although the County Court ought to have granted it notwithstanding the remonstrance of the inhabitants, (about which we express no opinion), yet, as they did not, the defendant had no authority to engage in the prohibited trade. It may be that it was improperly withheld, but it is enough here that it *was withheld,* and whether rightfully or wrongfully, is not now material. In either event, the defendant was guilty if he engaged in the prohibited traffic."

As said by the same court in *State* v. *Myers*, 63 Mo. 324:

"punishment must follow an infraction of the law, (operating without a license) regardless of the reason which prevented a license from being obtained or the motive actuating the officer who, in dereliction of his duty, refused to grant it."

The case of *Royall* v. *Virginia,* 116 U. S. 572, 29 L. Ed. 735, cited in 33 Am. Jur. 395 as holding to the contrary is easily distinguishable from the cases sustaining the general rule. In that case the Supreme Court of the United States recognized the general rule above set forth. It held, however, that a statute which required an attorney at law to obtain a revenue license, in addition to his license as an attorney, and punished for practicing without having obtained the revenue license, was but a form of imposing a tax. Being a tax, the provision for the punishment of one who pursued his profession without the revenue license was a part of the revenue system of the State and was merely a means of enforcing the payment of the tax itself or of a penalty for not paying it. The court further held that the prosecution was legally equivalent to a civil action of debt upon the statute and its substantial character was not changed by calling the default a misdemeanor and providing for its prosecution by information. The court then held that a tender of the amount due in funds legally sufficient under the laws of Virginia to discharge the tax was a complete defense to prosecution for the practice of law without the revenue license.

Except under similar or other special circumstances, none of which are present in this case, we believe that the true and sound rule is that when a permit or license for engaging in a certain class of business is lawfully required, the wrongful refusal of such license, or application therefor is, not a defense to prosecution for carrying on the business without it.

In the instant case the respondent was engaged in transporting asbestos shingles from without the State of Maine into the State of Maine over the highways of the State of Maine for hire without either he himself, or his employer, having the permit from the Public Utilities Commission of

Maine required by R. S. (1944), Chap. 44, Sec. 22 as amended. If the State of Maine could lawfully require such a permit for the privilege of using its highways in interstate commerce, the respondent is guilty.

For the purpose of making sure that the highways to be used are safe for any proposed operation in interstate commerce and that the safety of other users of the highways will not be endangered thereby, the State, under its police power, has the right to require permits for the use of its highways in interstate commerce. As said by the Supreme Court of the United States in *Bradley* v. *Public Utilities Commission,* 289 U. S. 92, 77 L. Ed. 1053 at 1056:

> "Protection against accidents, as against crime, presents ordinarily a local problem. Regulation to ensure safety is an exercise of the police power. It is primarily a State function, whether the locus be private property or the public highways. * * * * * The Commerce Clause is not violated by denial of the certificate to the appellant, if upon adequate evidence denial is deemed necessary to promote the public safety."

In *Buck* v. *Kuykendall,* 267 U. S. 307, 69 L. Ed. 623 at 626 the court said:

> "It may be assumed * * * * that appropriate State regulations, adopted primarily to promote safety upon the highways and conservation in their use, are not obnoxious to the commerce clause, where the indirect burden imposed upon interstate commerce is not unreasonable."

In the case of *California* v. *Thompson,* 313 U. S. 109, 115, 85 L. Ed. 1219 at 1223, the court said:

> "It (meaning the Supreme Court of the United States) has uniformly held that in the absence of of pertinent Congressional legislation there is constitutional power in the states to regulate interstate commerce by motor vehicle wherever it affects the safety of the public or the safety and con-

venient use of its highways, provided only that the regulation does not in any other respect unnecessarily obstruct interstate commerce."

In the case of *California* v. *Zook*, 336 U. S. 725, 93 L. Ed. 1005, it was held that the mere fact that Congress enacted a law or authorized a regulation requiring a license for a transaction affecting interstate commerce coincident with a state regulation requiring a license for the same transaction did not necessarily abrogate the state regulation if the enforcement of the state regulation did not conflict with the federal regulation. In that case the state regulation which was sustained was based upon the police power of the state, see *California* v. *Thompson, supra,* and its enforcement did not conflict with the federal regulation.

It is the considered opinion of this court that it is within the power of the State of Maine for the purposes stated in R. S. (1944), Chap. 44, Sec. 22 as amended by P. L., 1949, Chap. 263, to require that those who use the highways of this State for interstate motor transportation obtain a permit therefor, provided such permits are to be granted as a matter of right "unless the Commission shall find that the condition of the highways to be used is such that the operation proposed would be unsafe, or the safety of other users thereof would be endangered thereby." It is our further opinion that there is nothing in the Motor Carrier Transport Act of 1935, 49 U. S. C. A. Secs. 301 *et seq.* which prevents the State of Maine from requiring such permits, for the purposes and under the conditions set forth in said Section 22 as amended, from interstate carriers using its highways for carriage of goods for hire.

Even though the issue of the permit is mandatory provided the condition of the highways to be used is such that it would be safe for the operation proposed, and the safety of other users of the highways would not be endangered thereby, the Public Utilities Commission under the statute here in question has not only the duty but the power and

authority to determine these questions as questions of fact. If the Commission, upon evidence, determines these facts, or either of them, against the applicant for the permit to engage in interstate commerce, it may deny the permit. Even though such denial of the permit be wrongful, as before herein held, the wrongful denial of a permit is not the equivalent of a permit. Nor is a permit to transport one class of goods equivalent to a permit to transport goods generally with an illegal severable restriction contained therein. With respect to goods not covered by the permit, one who transports the same is in the same situation as though he had no permit at all.

True it is in this case that the respondent could justify under a valid permit issued to his employer. However, he, like his employer, cannot justify his acts for which a permit is required because of the wrongful refusal thereof to his employer, or because of the wrongful failure of the Public Utilities Commission to issue a permit to his employer broad enough to cover the transportation in question.

The situation here resolves itself into the simple case of a person who is operating without the permit required by law, to wit, a permit to engage in interstate commerce over the highways of Maine. As it was within the police power to require such permit for the purposes set forth in R. S. (1944), Chap. 44, Sec. 22 as amended, and as neither the respondent nor his employer had such a permit covering the transportation in question, the respondent is guilty of the offense charged. In accord with the stipulation the case is remanded to the Superior Court for sentence of the respondent.

*Respondent adjudged guilty.*

*Case remanded to the Superior Court. Respondent to be there sentenced in accord with stipulation.*