679 A.2d 525

**VISAGE EXPRESS, INC.**

v.

**STATE BOARD OF COSMETOLOGISTS.**

**No. 44, Sept. Term, 1995.**

Court of Appeals of Maryland.

July 25, 1996.

C. Lamar Garren (Martin E. Wolf, Piper & Marbury, on brief), Baltimore, for appellant.

Bruce C. Spizler, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

## OPINION

ELDRIDGE, Judge.

The State Board of Cosmetologists is an administrative agency governed by Maryland Code (1989, 1995 Repl.Vol., 1995 Cum.Supp.), § 5–101 *et seq.* of the Business Occupations and Professions Article and COMAR 09.22.01.01 *et seq.* Among other responsibilities, the Board grants, denies and suspends licenses to practice cosmetology and inspects beauty salons to determine whether they are in compliance with established statutory and regulatory requirements. Visage Express, Inc. is a corporation that owns and operates beauty salons in Maryland, Virginia and the District of Columbia. The dispositive issue on appeal is, in an enforcement proceeding initiated by the Board against Visage for a failure to employ licensed cosmetologists, whether Visage may properly defend on the ground that the Board had wrongfully denied cosmetology licenses to its employees.

## I.

Visage sponsored eight French nationals who wished to practice their chosen occupation, cosmetology, in the United States pursuant to the Mutual Educational and Cultural Exchange Act, 22 U.S.C. § 1431, *et seq.*[1] In early 1993 all eight

---

[1]. Under this exchange program, qualified foreign citizens are issued a "J–1" visa, which permits the holder to live and work in the United States for a maximum of 18 months.

French nationals received licenses from the District of Columbia Board of Cosmetology without taking an examination. Pursuant to the District of Columbia Code provisions in effect at that time, the District of Columbia Board granted licenses to the French cosmetologists absent an examination based on the Board's determination that the training and examination requirements in France were substantially equal to those in the District of Columbia.[2]

On the following day, the French cosmetologists applied to the Maryland State Board of Cosmetologists for licenses. The French nationals attempted to waive into Maryland without taking a Maryland examination based upon their status as licensed cosmetologists in the District of Columbia pursuant to Maryland Code (1989, 1995 Repl.Vol.), § 5–308 of the Business Occupations and Professions Article.[3]

---

**2.** The law in effect at the time that the French nationals applied for licenses in the District of Columbia provided that the District of Columbia Board, in its discretion, could waive the examination requirement for applicants from "another state, territory or foreign country, state, or province, wherein the requirements for registration are substantially equal to those in force in the District of Columbia at the time of filing application...." D.C.Code Ann. § 2–916 (1981 Edition) (amended and recodified at D.C.Code Ann. § 2–438 (1994)). Interestingly, the District's more recent amended version of the reciprocity statute deleted the reference to foreign countries and would have barred licensure of the French nationals absent a valid license from another state.

**3.** Section 5–308 states as follows:
"**§ 5–308. Waiver of examination requirement — License to practice.**
"(a) *In general.*—Subject to the provisions of this section, the Board shall waive any examination requirement of this subtitle for an individual who is licensed to practice as a cosmetologist or a limited practice cosmetologist in another state.
(b) *Conditions.*—The Board may grant a waiver under this section only if the applicant:
(1) pays to the Board an application fee established by the Board in accordance with § 5–205 of this title; and
(2) provides adequate evidence that the applicant;
(i) meets the qualifications otherwise required by this subtitle; and
(ii) became licensed in the other state after meeting, in that or any other state, requirements that are at least equivalent to the licensing requirements of this State."

Initially, the State Board returned the applications because the reciprocity information was not authenticated with the requisite seal from the District of Columbia Board. Thereafter, Visage resubmitted the applications with the appropriate seal. Visage assumed that the reciprocity rules would apply to the French cosmetologists with District of Columbia licenses and further assumed that the licenses from the State Board would be forthcoming. In response to a sudden and unrelated employee shortage, Visage permitted several of the French cosmetologists to work in Maryland before the Board acted with regard to the applications.

Upon resubmission of the applications with the appropriate seal, the Board denied licenses to all eight French nationals. Neither Visage nor the individuals who were denied licenses sought a contested case hearing before the Board as provided by Code (1989, 1995 Repl.Vol., 1995 Cum.Supp.), § 5–315 of the Business Occupations and Professions Article.[4] Thus, there was a failure to exhaust administrative remedies and a failure to seek judicial review of a final administrative decision.

Despite the Board's denial of the applications, Visage continued to employ the unlicensed cosmetologists in its Maryland salons in violation of Maryland law. In April 1993 a Board inspector, acting on a complaint that Visage employed unlicensed cosmetologists, discovered five unlicensed French nationals working at the Visage salon in Chevy Chase, Maryland. The inspector also determined that the salon was not using a

---

**4.** Section 5–315 provides in pertinent part as follows:

" **§ 5–315. Same—Hearings.**

(a) *Right to hearing.*—Except as otherwise provided in § 10–226 of the State Government Article, before the Board takes any final action under § 5–314 of this subtitle, it shall give the individual against whom the action is contemplated an opportunity for a hearing before the Board.

(b) *Application of contested case provisions.*—The Board shall give notice and hold the hearing in accordance with Title 10, Subtitle 2 of the State Government Article.

\* \* \* "

fumigant to sanitize its instruments. He therefore prepared violation notices and left copies of the notices at the salon.

A few days later, the Board met with the President of Visage to discuss the violations. Thereafter, in response to Visage's argument that the French cosmetologists were entitled to Maryland licenses without taking the examination, the Board on April 19, 1993, sent a letter to the President of Visage, explaining that, pursuant to § 5–308 of the Business Occupations and Professions Article, the Board could not issue licenses to the French cosmetologists unless they had passed an examination in Maryland or another state (including the District of Columbia) with at least equivalent licensing requirements to Maryland. The Board acknowledged (1) that the French cosmetologists were licensed in the District of Columbia, (2) that the training requirements in the District are equivalent to those in Maryland, (3) that the Board regularly grants reciprocal licenses to District cosmetologists who have taken the District examination and have not taken a Maryland examination, and (4) that the "requirements of training and examination in France are *more* stringent than those in Maryland." Despite the foregoing, the Board went on to explain that the absence of a state-given examination required the denial of cosmetology licenses because Maryland law required an examination in one of the States of the United States or the District of Columbia. In its letter, the Board also advised Visage that it rejected a proposed agreement whereby the French cosmetologists could work in Maryland until they passed the Maryland examination. The Board's letter stated that if Visage wanted the French cosmetologists to take the Maryland examination, interpreters could be utilized. The Board advised Visage that it would continue to investigate Visage salons in Maryland to ensure compliance with the Maryland licensing law.

After receipt of the Board's April 19th letter, Visage continued to employ unlicensed cosmetologists in its Maryland salons in violation of § 5–301 of the Business Occupations and

Professions Article of the Code[5] and COMAR 09.02.02D.[6] During Board inspections on June 18, July 20, September 29, and October 7, 1993, Visage received violation notices for employing the unlicensed French cosmetologists.[7]

In February 1994, pursuant to § 5–523 of the Business Occupations and Professions Article, and Code (1984, 1995 Repl.Vol.), § 10–201 *et seq.* of the State Government Article, the Board conducted a contested case hearing to consider what action it should take regarding Visage's violations of Maryland law. Although the notice of the hearing stated that the sole purpose of the hearing was to determine what, if any, action the Board should take because of Visage's violations, Visage defended on the ground that the French nationals had been wrongfully denied Maryland reciprocity licenses. After the hearing, the Board found that Visage had violated the statute and regulations, ordered $1800.00 in fines, and suspended Visage's Maryland salon licenses for 90 days. In addition, the Board stated that, under Maryland law, the French cosmetologists were not eligible for Maryland cosmetology licenses absent proof that they had taken the Maryland examination or a another state's examination that was equivalent to Maryland's.

Visage filed an action in the Circuit Court for Montgomery County for judicial review of the Board's decision. After a hearing, the circuit court affirmed the order of the Board,

---

**5.** Section 5–301(a) states that "an individual shall be licensed by the Board to practice cosmetology before the individual may practice cosmetology in the State."

**6.** COMAR 09.02.02D provides that "[t]he holder of [ ] a full service salon permit ... is responsible for ... [e]nsuring that all employees of the salon are properly licensed or registered."

**7.** It is noteworthy that all eight French nationals attempted to pass the Maryland cosmetology examination on July 19, 1993. Seven of the eight French cosmetologists failed the theory portion of the examination. All eight received an incomplete on the practical portion of the examination because they did not include a fumigant with their supplies. It was later determined that the French cosmetologists failed to include a fumigant because the company which administers the examination neglected to include fumigant as a necessary supply.

although the court reduced the fine to $1500.00. Visage took an appeal to the Court of Special Appeals. The Board, however, did not take a cross-appeal from the Circuit Court's action reducing the fine. Prior to argument in the Court of Special Appeals, this Court issued a writ of certiorari.

## II.

Visage argues that the proper issue before us is whether the Board misinterpreted § 5–308 of the Business Occupations and Professions Article and improperly denied licenses to the French cosmetologists. According to Visage, § 5–308 mandates that the Board waive the examination requirement for applicants who are licensed cosmetologists in another state so long as the applicants pay the registration fees, meet all the other qualifications for a license set forth in § 5–304, and "became licensed in the other state after meeting, in that or any other state, requirements that are at least equivalent to the licensing requirements of this State." § 5–308(b)(2)(ii) of the Business Occupations and Professions Article. Visage asserts that the French cosmetologists, having been licensed in another state, which includes the District of Columbia, should be granted a license as long as the requirements of the District are at least equivalent to the licensing require- ments of Maryland. Visage points out that the District of Columbia determined that France's licensing requirements were "substantially equal" to those of the District, and that the State Board acknowledged that the training and examina- tion requirements in France are more stringent than those in Maryland. Thus, according to Visage, the State Board's dif- ferentiation between an individual who became licensed in the District of Columbia by passing the District's examination and an individual who became licensed in the District of Columbia by taking an equivalent examination in France, is a "distinction without a difference." This "strained and narrow reading of the waiver provisions," argues Visage, is "contrary to the legislative intent" and does not consider the statute's underlying purpose. (Appellant's brief at 12).

In contrast, the Board argues that the proper issue before us is not whether the Maryland licenses should have been granted. The Board contends that the controlling issue is whether Visage failed to ensure that all of its Maryland employees had Maryland cosmetology licenses. The Board maintains that a knowing violation of the requirement that all cosmetologists practicing in Maryland have Maryland licenses justifies the assessment of fines and the temporary suspension of Visage's license. Moreover, argues the Board, Visage's actions warrant the fines and suspension because, instead of exhausting administrative remedies and seeking judicial review of the Board's denial of licenses, Visage continued to violate the statute and regulations even after it received the first violation notice.

The Board alternatively defends its decision to deny the licenses based upon its interpretation of § 5–308's waiver provision. The Board states that § 5–308(b)(2)(ii) provides for a waiver of the Maryland examination requirement with regard to a cosmetologist licensed in another state if the applicant had become licensed in the other state after meeting requirements in that other state (not another country) that are at least equivalent to Maryland's. According to the Board, the plain language of the statute authorizes a waiver of the examination requirement only when an individual was licensed in another state by passing an examination *in that state.* Here, the District of Columbia licensed foreign trained and examined cosmetologists without requiring a District examination. Thus, the Board argues that the District of Columbia requirements are not equivalent to Maryland's and that, therefore, the French cosmetologists may not be licensed in Maryland without passing the Maryland examination.

### III.

This proceeding is an enforcement action for a failure to employ licensed cosmetologists. Visage, while conceding that it committed the regulatory violations of which it was accused, now attempts to justify its unlawful actions by arguing that its employees' applications for licenses were wrongful-

ly denied. We hold that Visage may not properly defend its intentional violations of licensing requirements by attempting to prove that the Board wrongfully denied licenses to Visage's employees.

The general rule is that, when a license for engaging in a particular occupation, business or activity is required, and the license requirement is valid, the wrongful denial of the license is not a viable defense to an enforcement proceeding for carrying on the occupation, business or activity without the license. *See, e.g., Poulos v. New Hampshire,* 345 U.S. 395, 409–414, 73 S.Ct. 760, 768–771, 97 L.Ed. 1105, 1116–1118 (1953); *Hall v. Geiger–Jones Co.,* 242 U.S. 539, 553–554, 37 S.Ct. 217, 222, 61 L.Ed. 480, 490 (1917); *State v. Orr,* 68 Conn. 101, 35 A. 770 (1896); *Commonwealth v. McCarthy,* 225 Mass. 192, 114 N.E. 287 (1916); *State v. Nagle,* 148 Me. 197, 91 A.2d 397 (1952); *State v. Alix,* 110 R.I. 350, 293 A.2d 298 (1972). *See also Air Lift, Ltd. v. Bd. of Co. Comm'rs,* 262 Md. 368, 377, 397–398, 278 A.2d 244, 249, 259 (1971).

For example, in *Commonwealth v. McCarthy, supra,* the Massachusetts State Board of Examiners of Plumbers prohibited a journeyman plumber from taking an examination for a license as a master plumber because he had not satisfied the prerequisite of being a journeyman plumber for three years. Rather than filing a petition for writ of mandamus to compel the Board to allow him to take the examination, the journeyman plumber engaged in business as a master plumber without a license. The Supreme Judicial Court of Massachusetts stated that the Board's rule, that a journeyman plumber could not take an examination for a license as a master plumber until he had practiced for three years as a journeyman, was invalid. Nevertheless, the court upheld the journeyman's conviction for engaging in the business of being a master plumber without a license because "the invalidity of the rule ... [did] not justify him in carrying on the business of master plumber without a license." *Commonwealth v. McCarthy, supra,* 225 Mass. at 196, 114 N.E. at 289.

In *State v. Alix, supra,* the Supreme Court of Rhode Island upheld the conviction of a defendant who operated a hoisting crane without a license even though the defendant contended that the state had arbitrarily denied his license. The court reasoned as follows (110 R.I. at 353, 293 A.2d at 299–300):

"This court is unable to subscribe to any policy so unsound as to allow any person who challenges the fairness of any licensing board member or the sufficiency of any regulations to continue to engage in the regulated activity without the proper license.... The arbitrary denial of a license and the resulting injustice to the applicant, if any, does not justify the creation of an important risk to the safety and welfare of many which would result from the wholesale disregard of our licensing procedures. The question of the propriety of the denial of a license is a matter for administrative review.... It is abundantly clear that judicial review of arbitrary administrative action is available under the law of this state and that defendant was not compelled to operate a hoisting crane unlawfully by the absence of an adequate legal remedy."

■ We fully agree with the reasoning set forth in the above-cited cases. When a statute, rule, or regulation requires that an individual or entity obtain a license to perform a certain activity, when the requirement of the license is valid, and when there are judicial remedies to challenge an alleged wrongful refusal of that license, the person or entity may not disregard the licensing requirements and later challenge them only when proceeded against for acting without a license.

In *Salisbury Beauty Schools v. State Board of Cosmetologists,* 268 Md. 32, 46–61, 300 A.2d 367, 376–384 (1973), this Court upheld the validity of the licensing requirements in Title 5 of the Business Occupations and Professions Article of the Code. Visage does not challenge the validity of the statutory and regulatory licensing scheme. There were available administrative and judicial review remedies to contest the Board's denial of the license applications in this case, but those remedies were not pursued. Instead, Visage intentionally

disregarded Maryland's licensing requirements and continued to employ unlicensed cosmetologists even after its first violation notice. The law does not permit individuals or entities to flout valid licensing requirements, gambling that their violation of the law will be undiscovered or overlooked, and then, if proceeded against for a failure to obtain a license, defend on the ground that the application for a license was improperly denied.

For these reasons, in this proceeding, neither the Board nor the circuit court was required to consider the merits of Visage's argument that the Board had wrongfully denied licenses to the French nationals. Moreover, we shall not reach the merits of that argument.

*JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANT TO PAY COSTS.*