**LEITHAUSER v. HARTFORD FIRE INS. CO.**

No. 8640.

Circuit Court of Appeals, Sixth Circuit.

Oct. 7, 1941.

As Amended on Denial of Rehearing
Jan. 12, 1942.

· C. W. Palmer, of Defiance, Ohio, and Eugene Rheinfrank, of Toledo, Ohio, for appellant.

Ross W. Shumaker, of Toledo, Ohio, and C. G. Myers, of Chicago, Ill. (Fraser, Effler, Shumaker & Winn, of Toledo, Ohio, and Myers & Snerly, of Chicago, Ill., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Suit in equity for reformation of, and recovery upon, a fire insurance policy upon which this court denied recovery in an action at law. Leithauser v. Hartford Fire Ins. Co., 6 Cir., 78 F.2d 320. The suit commenced by the insured and revived in the name of his administrator, was dismissed on the hearing.

The fire occurred on July 20, 1930, and the action at law was begun on March 4, 1931. Our decision, denying recovery be-

cause the property destroyed was on leased ground, in violation of the terms of the policy, and refusing to incorporate as a part of the policy the Daily Report to the Company purporting to show that the property was on leased ground, was handed down on June 29, 1935. The Supreme Court denied certiorari on November 25, 1935, 296 U.S. 645, 56 S.Ct. 249, 80 L.Ed. 459, and on May 8, 1936, the District Court denied a motion to file an amended petition setting up a claim for reformation of the policy. This suit in equity was begun on March 30, 1936.

The questions presented here are,—(1) whether this suit is barred by the provisions in the policy requiring suits to be brought within twelve months after the fire,[1] or whether appellant's rights are preserved by Sec. 11233 of the Ohio General Code;[2] (2) whether the case is res adjudicata; (3) whether appellant is estopped; and (4) whether appellant has made out a case for reformation.

In the prayer of its petition appellant sought to reform the policy by adding thereto and making a part thereof the words, "It is agreed and understood, anything in this policy to the contrary notwithstanding, that the property insured by this policy is located on ground not owned by the insured in fee simple," or words of like import.

Other questions out of the way, we think the evidence establishes a clear basis for reformation. The facts were set forth at some length in our former opinion, supra.

In 1928 when the original policy was written, of which the one here sought to be reformed is the second renewal, appellee was represented in Sherwood, Ohio, by the agency of Leithauser & Parent, being the same Leithauser insured. His principal business was that of grain elevator manager. The elevator was constructed on ground owned by the B. & O. Railroad Company. The policy form was filled out by Grace Parent, Leithauser's partner in the insurance business, who did in the main the office and clerical work. The blanks in the original policy were filled in in triplicate by typewriting, and contained no statement that the elevator was on leased ground. One copy of the policy went to the insured, and the other two were pasted separately upon green forms called Daily Reports intended for additional information, one of which was retained in the agency office, and the other went to the Ohio Audit Bureau in Toledo, for recording, whence in the ordinary course it would be sent to the home office of appellee.

On the face of the Daily Report attached to the copy of the original policy were words indicating that Leithauser was insured in the sum of $11,000 on an elevator building. At the bottom of the page appeared this paragraph: "Attached to and forming part of Policy No. 1207 of the Hartford Fire Insurance Co. of Hartford, Conn., issued at its Sherwood Ohio Agency. Dated Jan. 28th, 1928."

On the reverse side of this Daily Report were a number of questions about the nature of the property insured, its value, state of repair, etc. The word "Yes" had been typed thereon in answer to the question, "Is it on leased ground?"; and to the question, "Date and term of lease?" there was the answer, "B. & O. Ground." There is no substantial doubt that the appellee received this Daily Report with the policy attached, since the Company later accounted to Miss Parent for her share of the premium, and never raised any question about policy No. 1207. In this connection she testified that blank policies were issued to her in pads, numbered consecutively, and that she had to account for the disposition of each one, even to the extent of returning those that were soiled and not used; and that it would be impossible for the Company to account to her as it did at the end of the month, if it had not received the Daily Report.

On January 24, 1929, Miss Parent issued policy No. 1222 as a renewal of No.

---

[1] "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

[2] "§ 11233. Saving in case of reversal, etc.—In an action commenced, or attempted to be commenced, if in due time a judgment for the plaintiff be reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff, or, if he dies and the cause of action survives, his representatives may commence a new action within one year after such date, and this provision applies to any claim asserted in any pleading by a defendant. * * *"

1207. This information appeared on the face of the Daily Report which was also marked, "Attached to and forming part of Policy No. 1222 of Hartford Fire Insurance Co. of Hartford, Conn., issued at its Sherwood, Ohio Agency. Dated Jan. 24, 1929." She did not fill out the questionnaire on the reverse side but simply typed upon it vertically the words, "Same as before." These words, she testified, meant "that the risk remained the same as it did the previous year," and there is no evidence in the record that appellee voiced any objection to the practice. This Daily Report was likewise taken from the agency files.

The Daily Report for the second renewal was attached to Policy No. 1229 issued January 29, 1930, the one here sought to be reformed. It referred to old Policy No. 1222. On its reverse side was typed diagonally across the printed questions the words, "Same As Before." This report came from the files of appellee and was marked "Hartford Fire Insurance Co. Received Jan. 31, 1930 Chicago M & E Dept." There was also a notation that it had been received by the Ohio Audit Company previously.

Miss Parent testified that the Company used a uniform form for all policies, and that these contained no blanks for the purpose of setting out in the policy itself that the elevator was on leased ground; that she did not incorporate the information in the policy or in a rider thereto, because she "did not know it was necessary"; that she "intended to convey the entire information to the company" and "did not think it necessary to put anything on the policy to the assured."

She testified further that the elevator inspectors of appellee came several times to look at the property during the two and one-half years between the issuance of the first policy and the date of the fire; that they carried identification cards from the Company with the number of the policy and the authority to inspect; that they examined a plat book in her office which she was sure indicated that the elevator was on leased ground; that they made reports to the Company consisting of long lists of answers to questions.

Leithauser's testimony at the first trial was introduced. He stated positively that the affirmative answer to the question, "Is it on leased land?" was on the Daily Report when he got the first policy; and that he knew his answers were the same when the second and third Daily Reports were made; and that the Company never said anything to him about the buildings being on leased land.

Charles Kennedy, Chief Clerk in the office of the Ohio Audit Bureau testified that the Bureau forwarded the daily reports to the insurance companies on the same day it received them.

Appellee did not controvert any of the testimony relied upon by appellant touching the claim for reformation.

■ We think that the testimony clearly establishes that it was the mutual intention of the parties to effect a contract of insurance upon the elevator regardless of the provision in the policy which rendered it void unless Leithauser's interest therein was that of sole and unconditional ownership in fee. Any contrary inference is inconsistent with the commonly accepted principles of fair dealing. When appellee issued the original policy and accepted the premium therefor it knew that the elevator was on ground leased from the B. & O. Railroad Company. When it issued the second and third policies and accepted the premiums it had the same information. There is no ambiguity nor uncertainty in the words, "same as before."

■ Appellee introduced no evidence to rebut appellant's case on the merits. It stood upon its technical defenses and upon what it deemed was the weakness of appellant's case. We do not think the action was barred by the twelve months' limitation in the policy for bringing suit, heretofore quoted. In applying state law it is our duty " * * * to ascertain from all the available data what the state law is and apply it * * *," West v. American T. & T. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956; and in making such application the considered judgment of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by us unless we are persuaded by other data that the highest court of the state would do otherwise. Id.

There has been no decision by the Supreme Court of Ohio applying section 11233 above quoted in cases where the parties have previously limited by contract the time in which a suit thereon might be brought. Decisions upon this precise point by two intermediate appellate courts have

reached superficially opposite conclusions. In the earlier of these two cases, Prudential Ins. Co. v. Howle, 1899, 10 Ohio Cir. Dec. 290, certain life insurance policies contained a provision that no suit should be maintained thereon unless commenced within six months after the decease of the insured. The court held that this provision was valid and that § 4991, Rev.Stat., § 11233, Ohio Gen.Code, had no application. There is language in the opinion and some citations which indicate that the court considered that section 4991 had no application to limitations created by contract. However, closer inspection of the decision reveals language to the effect that the first suit failed because brought by one not a proper party plaintiff and therefore did not operate to extend the time for bringing the second. The court was careful to point out that the cases it had cited in support were not in conflict with an earlier Ohio case reported in 2 Disn. 128 (Fellowes v. Madison Ins. Co., 1858) wherein it appeared that the first suit had been brought by another for the use of the plaintiff, had been discontinued and a second suit instituted in plaintiff's own name, which the court seemed to consider constituted a continuous claim, and deciding that the language of the condition must be "taken most strongly against the defendant."

We think that the Howle case has no such sweeping effect as that claimed for it but on the assumption that it is authority for the rule that section 4991 does not apply to contractual limitations, there is the much later case (1915) of Cortesi v. Firemen's Fund Ins. Co., 27 Ohio Cir.Dec. 100, reaching the opposite conclusion. In that case a fire insurance policy provided that no suit could be maintained to recover on the policy unless brought within twelve months after the fire. The action arose on the policy more than twelve months thereafter but within twelve months of the dismissal of a prior action. The court held that the stipulation did not waive or abrogate rights of the plaintiffs under Sec. 11233 saying, "when the parties herein entered into the stipulation or agreement contained in the policy they must have, or at least should have considered it in the light of the provisions of such statute. It is presumed they knew the law, and that it was their intention to make their contract in conformity thereto, and if they did not do so the defendant in error cannot now complain because it was in violation of and not in conformity with the provisions of the general statute governing the same. A contract for a shorter limitation does not control in the face of the general statute, which must govern in such cases."

In the Cortesi case the Supreme Court of Ohio overruled a motion to certify but has never passed in any way upon the Howle case. The denial of a motion to certify is not tantamount to an affirmance but the action of the Supreme Court is not without weight upon the question of what the Ohio law is. On the data available we are persuaded that the holding in the Cortesi case must be accepted.

In the first case Leithauser did not fail upon the merits within the meaning of Sec. 11233. The merits are embodied in the policy as reformed, but not in the policy as it was originally written. All that was decided in the first case was that the policy could not be recovered upon as it stood. In a somewhat similar case, Hartford Fire Ins. Co. v. Jones, 6 Cir., 15 F.2d 1, 2, this court followed the rule of the Supreme Court and denied recovery in law, because the property insured was encumbered by a chattel mortgage, the existence of which was not indorsed on the policy in accordance with its terms. But the court indicated that the insured was not without remedy, saying, "It is evident here * * * that, if the testimony for the insured is true, they are entitled in equity to a reformation of the contract, on the ground of mistake and fraud, and that they thereby may escape the otherwise harsh result." See, also, Lumber Underwriters v. Rife, 237 U.S. 605, 610, 35 S.Ct. 717, 59 L.Ed. 1140.

In Northern Assur. Co. v. Grand View Building Ass'n, 203 U.S. 106, 27 S. Ct. 27, 51 L.Ed. 109, this procedure was actually followed and the Supreme Court affirmed a decree reforming a policy and allowing a recovery thereon, after the insured had failed in a suit at law upon the policy. The court expressly ruled that the former decision was not an adjudication that the policy could not be reformed, saying, "It was rendered in an action at law, and only decided that the contract could not be recovered upon as it stood, or be helped out by any doctrine of the common law." This is enough to say on the question of res adjudicata.

The judgment in the first Leithauser suit was not conclusive of the second. While

the parties were the same in each case, the causes of action were not.

In the Grand View case the court went further (203 U.S. page 108, 27 S.Ct. page 28, 51 L.Ed. 109, supra) and decided that an election to stand on the action at law was not made out, that "the plaintiff in the former action expressed on the record its reliance upon the facts upon which it now relies. It did not demand a judgment without regard to them and put them on one side, as was done in Washburn v. Great Western Ins. Co., 114 Mass. 175, * * *." The court held that an election was not made out on the record.

The same is true here. Leithauser did not select, in the first case, one of two inconsistent remedies. He tried to incorporate into the policy the same Daily Report and related matter used later as the basis of the prayer for reformation. Our decision in effect was that this procedure offered him no remedy at all. He undoubtedly thought that it was a remedy but when he was confronted with the judicial determination that it was not, there is nothing in the law of election to bar him from pursuing the right one. See Grizzard v. Fite, 137 Tenn. 103, 108, 191 S.W. 969, L.R.A. 1917D, 652.

The decree of the District Court is reversed and the cause remanded with directions to decree reformation as indicated and for such other proceedings as are consistent herewith.