75 So.2d 822 (1954)
Estelle Parker HOAGLAND, doing business as Estelle Parker, Appellant,
v.
RAILWAY EXPRESS AGENCY, Inc., Appellee.
Supreme Court of Florida. En Banc.
October 5, 1954.
Rehearing Denied December 7, 1954.
J. Luther Drew, West Palm Beach, Truett & Watkins, Tallahassee, for appellant.
Ausley & Ausley, Tallahassee, Mizell & Carmichael, West Palm Beach, for appellee.
ROBERTS, Chief Justice.
This appeal involves the question of the applicability of the remedial provisions of Section 95.06, Florida Statutes 1953, F.S.A., to a suit instituted against a common carrier by a shipper where the uniform express receipt under which the carrier undertook the interstate shipment of the goods provided that "suits shall be instituted only within two years and one day after the date when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof."
The plaintiff-appellant's original suit to recover for the loss of her goods was filed well within the two-year period specified in *823 the receipt, and a verdict and judgment was entered in her favor. This judgment was, however, reversed by this court, but not on the merits. See Railway Express Agency, Inc., v. Hoagland, Fla., 62 So.2d 756. The instant suit was filed shortly after the mandate in that appeal went down, by which time the two-year period specified in the receipt had expired. Being of the opinion that the saving provisions of Section 95.06 could not be applied in the circumstances here present, the lower court entered summary judgment for defendant. This appeal followed.
Section 95.06 provides that "If an action shall be commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal or writ of error, the plaintiff * * * may commence a new action within one year after the reversal." It is the contention of the appellee, however, that this statute is not applicable here for the reason that the federal statute regulating the shipment of goods in interstate commerce, Title 49 U.S.C.A. § 20(11), has pre-empted this field and supersedes all state legislation on this subject.
Paragraph (11) of Section 20, 49 U.S.C.A., in its original form, was added to the interstate commerce act of 1887, Chapter 104, 24 Stat. at L. 370, 386, by the so-called Carmack Amendment of 1906, Section 7, Chapter 3591, 34 Stat. at L. 584, 595. This amendment provided in part as follows:
"That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."
Prior to the Carmack Amendment, the liability of carriers to shippers for interstate shipments of property, as enforced in both federal and state courts, was determined in accordance with the general common law, as declared by the United States Supreme Court and enforced in the federal courts throughout the United States, or as determined by the public policy of a particular state, or as prescribed by statute law of a particular state. See Adams Exp. Co. v. Croninger, 1912, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314, 319; Pennsylvania R. Co. v. Hughes, 191 U.S. 477, 24 S.Ct. 132, 48 L.Ed. 268; Chicago, M. & St P.R. Co. v. Solan, 169 U.S. 133, 18 S.Ct. 289, 42 L.Ed. 688.
After the enactment of the Carmack Amendment, however, it was established by decisions of the United States Supreme Court that questions relating to the liability imposed on interstate carriers by this Amendment, and the validity of stipulations in contracts limiting the liability thereby imposed, were federal questions to be determined under the general common law, as declared by the United States Supreme Court, and not in accordance with state legislation or the state public policy on the subject. Such questions were said to be "withdrawn from the field of state law or legislation." Missouri, K. & T.R. Co. v. Harriman Bros., 227 U.S. 657, 33 S.Ct. 397, 401, 57 L.Ed. 690; See also Adams Exp. Co. v. Croninger, supra, and cases therein cited.
But the Carmack Amendment did not grant to shippers and carriers the right to contract as to the time within which claims should be filed to recover for loss of goods; this right existed and was upheld, as against state statutes of limitations providing a different limitation period, long before this amendment was enacted into *824 law. As stated in Missouri, K. & T.R. Co. v. Harriman Bros., supra, "Such limitations in bills of lading are very customary and have been upheld in a multitude of cases. We cite a few: [Citations]." This Amendment did, however, have the effect of withdrawing from state legislatures any legislative determination of the reasonableness of such contractual limitations. As stated in Missouri, K. & T.R. Co. v. Harriman Bros., supra:
"The liability sought to be enforced is the `liability' of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack amendment of the Hepburn act of June 29, 1906. The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed, is a Federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation."
Thus, a state law declaring invalid a contract which required the bringing of an action for a carrier's liability in less than the state statutory period was held in that case to be ineffective to invalidate a contractual provision requiring suit to be brought against the carrier within 90 days. (This case was decided prior to the Cummins Amendment of 1915 and the Transportation Act of 1920, referred to hereafter.) In other words, the state law was a legislative determination of the minimum requirements of reasonableness of such a contractual limitation in a bill of lading; and since under the Carmack Amendment this became a federal question to be determined under the general common law, the state's attempt to determine the question by legislative fiat was held to be invalid.
It should be noted that nowhere in the Carmack Amendment did the Congress attempt to regulate by statute the permissible limits of contractual agreements in bills of lading as to the time within which claims and suits should be filed against the carrier. This it did in 1915 by the Cummins Amendment, March 4, 1915, Chapter 176, 38 Stat. at L. 1196, 1197, prohibiting a common carrier to contract for "a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years". By Section 20 of the Transportation Act of 1920, February 28, 1920, Chapter 91, 41 Stat. at L. 456, 494, Section 20(11) of the interstate commerce act was again amended by deleting the provision as to the four-month period within which to file claims and by specifying the time at which the two-year period for the filing of suits would begin to run, that is, from the time of the disallowance, in writing, of the claim.
But neither the Cummins Amendment of 1915 nor the Transportation Act of 1920 was intended to operate as a statute of limitations. They merely "restricted the freedom of carriers to fix the period within which suit could be brought  prohibited contracts for any shorter period than the one specified." Louisiana & Western Railroad Co. v. Gardiner, 1927, 273 U.S. 280, 47 S.Ct. 386, 388, 71 L.Ed. 644. In the absence of such a contractual limitation or in the event such a contractual limitation was void because contrary to the requirements of the Transportation Act, the applicable state statute of limitations is applied. Thus, in Louisiana & Western Railroad Co. v. Gardiner, supra, the bill of lading provided that suit must be brought within two years and one day after delivery of the property, whereas the Transportation Act specifies that such a contractual limitation period shall run from the date of the disallowance in writing of the shipper's claim. The court said: "Here, although the rights of the parties depended upon instruments the meaning and effect of which must be determined according to rules approved by the federal courts, there was no federal statute of limitations and the local one applied."
The history and development of the interstate commerce act has been set forth in some detail to show its scope and purpose and to point up the fact that the Congress has not yet seen fit to enact into law a statute *825 of limitations governing suits against an interstate carrier by a shipper. While, as noted, the question of the reasonableness of such contractual limitations is to be determined in accordance with federal law, it certainly cannot be said that there is no field whatsoever for the operation of state statutes of limitation since, as has been shown, such local statutes apply when there is no valid stipulation to the contrary in the bill of lading or express receipt.
The United States Supreme Court has often said that in those fields of commerce where national uniformity is not essential, either the state or federal government may act. Willson v. Black-bird Creck Marsh Co., 2 Pet. 245, 7 L.Ed. 421; California v. Thompson, 313 U.S. 109, 114, 61 S.Ct. 930, 85 L.Ed. 1219, 1221; Cloverleaf Butter Co. v. Patterson, 315 U.S. 148, 62 S.Ct. 491, 496, 86 L.Ed. 754. There is obviously no requirement of uniformity in respect to the time within which suits between interstate carrier and shipper shall be brought (except for the minimum period required by the Cummins Amendment of 1915, as amended by the Transportation Act of 1920, supra) since such provisions may vary in accordance with the agreements of the carrier and shipper or, in the absence of such, in accordance with the varying statutes of limitations of the states.
There being, then, no requirement of uniformity, and no specific federal legislation in this respect, the question here presented must be determined under the well-settled rule which was restated in Cloverleaf Butter Co. v. Patterson, supra, as follows: "When the prohibition of state action is not specific but inferable from the scope and purpose of the federal legislation, it must be clear that the federal provisions are inconsistent with those of the state to justify the thwarting of state regulation." And the question before this court may be stated as follows: Is there any clear conflict or inconsistency between the provisions of Section 20(11) of the interstate commerce act, as interpreted by federal courts, and the provisions of Section 95.06, Florida Statutes 1953, F.S.A., so as to prohibit its application in the instant case? In our opinion, there is not.
We are cognizant of our duty to adhere to the decisions of the Supreme Court of the United States in a case of this kind; but counsel have cited no decision of that court (nor of a lower federal court, for that matter) in which the facts are so similar as to make such decision binding on this court. This being the case, we are free to determine the appropriate rule to be applied. Two decisions of that court which seem to us somewhat pertinent are Missouri, K. & T.R. Co. v. Harris, 1914, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed 1377, and Leigh Ellis & Co. v. Davis, 1923, 260 U.S. 682, 43 S.Ct. 243, 67 L.Ed. 460, both of which dealt with the impact of the Carmack Amendment on state legislation.
In the Missouri, K. & T.R. Co. v. Harris case, the court was concerned with a Texas statute which authorized the granting of attorney's fees to a successful claimant where the claim was contested. Suit was instituted in a state court by the shipper to recover on the common-law liability of the carrier, and the Texas court, pursuant to the applicable state statute, entered judgment in the shipper's favor for the amount of the damages, plus an attorney's fee. It was contended on the appeal to the United States Supreme Court that the state statute could not be given effect in the face of the Carmack Amendment which, it was argued, had superseded all state laws respecting liability for loss of interstate shipments. In upholding the action of the state court in applying the state statute, the United States Supreme Court said [234 U.S. 412, 34 S.Ct. 793]:
"* * * the Texas statute now under consideration does not in anywise either enlarge or limit the responsibility of the carrier for the loss of property intrusted to it in transportation, and only incidentally affects the remedy for enforcing that responsibility. * * *
"In claims of this character, based upon the ordinary liability of the common carrier, although regulated by the commerce act, the state courts have full *826 jurisdiction, and some differences respecting the allowance of costs and the amount of the costs are inevitable, as as being peculiar to the forum. And we think that where a state, as in this instance, for reasons of internal policy, in order to offer a reasonable incentive to the prompt settlement of small but well-founded claims, and as a deterrent of groundless defenses, establishes by a general statute otherwise unexceptionable the policy of allowing recovery of a moderate attorney's fee as a part of the costs, in cases where, after specific claim made and a reasonable time given for investigation of it, payment is refused, and the claimant succeeds in establishing by suit his right to the full amount demanded, the application of such statute to actions for goods lost in interstate commerce is not inconsistent with the provisions of the commerce act and its amendments. The local statute, as already pointed out, does not at all affect the ground of recovery, or the measure of recovery; it deals only with a question of costs, respecting which Congress has not spoken. Until Congress does speak, the state may enforce it in such a case as the present."
In the other case, Leigh Ellis & Co. v. Davis, supra, the shipper brought suit in a federal district court (Georgia) to recover upon two bills of lading. Reference to the opinion of the federal district court in which the suit was instituted, Leigh Ellis & Co. v. Payne, 274 F. 443, 445, shows that the shipper's first suit in federal court was dismissed because brought in the wrong venue and that his second suit was filed within six months of the dismissal but more than two years and one day after delivery, which was the limitation period specified in the bill of lading (the contract was made prior to the Transportation Act of 1920). The shipper sought to save his right to sue by pleading a Georgia statute providing that a suit in renewal of one dismissed, but which had been brought in time, should stand on the same footing as to limitation as the original suit. The federal district court refused to apply the statute on the ground that "The exception of the Georgia statute of limitations is not imported as an exception into the absolute stipulation of a contract. It has been so ruled repeatedly by the Supreme Court of Georgia; * * * [citations]." Thus it can be seen that the district court merely followed the local Georgia rule as to the applicability of its remedial statute to a limitation period specified by contract, as distinguished from one specified by statute. And the statement by the United States Supreme Court in its opinion to the effect that [260 U.S. 682, 43 S.Ct. 244] "The statutes of the states where the goods were shipped and the suit was brought do not affect the contract, and the reasonableness of the limitation is a matter of law * * * so that the bringing of a previous suit, alleged in the declaration, does not save the case. * * *" must be interpreted in the light of the facts of that case, that is, that it was a suit upon a bill of lading filed in a federal court in a state where the remedial statute would not have been applied even by the state court under similar circumstances. Whether the federal court would have given effect to the statute if the state courts had so interpreted it is a matter of pure speculation. But compare Leithauser v. Hartford Fire Insurance Co., 6 Cir., 124 F.2d 117, certiorari denied 316 U.S. 663, 63 S.Ct. 942, 86 L.Ed. 1739, in which the federal court applied a similar remedial statute of the State of Ohio to a contractual limitation contained in an insurance policy, since the Ohio courts did so.
In the instant case, as in the Missouri, K. & T.R. Co. v. Harris case, the suit is in a state court, and it was bottomed upon the "ordinary liability" of the carrier, as well as upon the express receipts, since it was alleged in the complaint that the carrier was negligent in permitting the shipper's goods to be lost by fire while stored in the carrier's warehouse. The remedial statute in question, like the one involved in the Missouri, K. & T.R. Co. case [234 U.S. 412, 34 S.Ct. 793], "does not in anywise either enlarge or limit the responsibility of the carrier for the loss of property intrusted to it in transportation, and only incidentally *827 affects the remedy for enforcing that responsibility." By further analogy, our remedial statute applies in broad terms to all actions prosecuted in this state, and only incidentally covers suits between carriers and shippers. It might also be noted that the remedial provisions of Section 95.06 have long been a part of the internal policy of this state, having been first enacted in 1828 by the Legislative Council of the Territory of Florida (Sec. 16, November 10, 1828). It was designed to secure to a diligent suitor the right to a hearing in court until he reaches a judgment on the merits, and has always been liberally construed by this Court. Cf. Livingston v. Malever, 103 Fla. 200, 137 So. 113, 119.
It is our opinion that there is no such inconsistency or conflict between Section 20(11) of the interstate commerce act and the remedial provisions of Section 95.06 as to require this court to infer that the federal act has superseded the state statute in question. It goes without saying that statutes of limitations, and the exceptions thereto, affect only the remedy of the litigant. The remedial statute in question does not undertake to specify what is a reasonable limitation period within which the shipper may begin the litigation of his claim; and while the statute speaks of filing a "new action," the second is really but a continuation of the first action commenced within the contractual limitation period. Many similar remedial statutes expressly provide that the second action shall be deemed a continuation of the former action. See Bollinger v. National Fire Ins. Co. of Hartford, Conn., 25 Cal.2d 399, 154 P.2d 399, 404. We have already noted that the Congress of the United States has not as yet seen fit to broaden the "scope and purpose" of the interstate commerce act to provide specifically a statute of limitations for suits between interstate carriers and shippers, and that the state limitation period (and, of course, the remedial statute in question) would control in the absence of a valid contractual limitation stipulated by the parties. Affecting, as it does, only the procedure for the enforcement of the shipper's claim, we do not feel impelled to construe Section 95.06 as engrafting upon the limitation periods stipulated in bills of lading or express receipts a legislative fiat as to the reasonableness thereof  and this, as above noted, appears to be the only "field" in respect to such limitations that has been "pre-empted" by the federal government.
By consenting to the litigation of his claim in our state court, the carrier must be deemed to have accepted such court as the forum in which to try the cause, in accordance with the rules of practice and procedure governing litigation in the courts of this state. Could the carrier here have complained that the cause could not be reinstated by the lower court after its dismissal for lack of prosecution, upon good cause shown, if such reinstatement had been accomplished after the expiration of the period stipulated in the express receipt? We do not think so. The analogy between our statute providing for such a reinstatement and the provisions of the remedial statute is immediately apparent.
We hold, then, for the reasons stated, that the provisions of Section 95.06 have not been superseded by Section 20(11), supra, insofar as a suit in a court of this state is concerned.
There is also involved here the question of whether the remedial provisions of Section 95.06 will be applied in this jurisdiction to save a suit barred by a contractual period of limitations. This question has not previously been ruled on by this court. We have held, however, that its remedial provisions should be liberally construed. Livingston v. Malever, 103 Fla. 200, 137 So. 113. It might also be noted that the State of New York, the place where the instant contract was made, has a statute almost identical with Section 95.06, and that it is held in that jurisdiction that the saving provisions of the statute will be applied to a contractual limitation period. Bucholz v. United States Fire Insurance Co., 269 App. Div. 49, 53 N.Y.S.2d 608. The annotation in 149 A.L.R. at page 486, et seq., sets forth the divergent views among the courts of other jurisdictions on this question.
*828 We are persuaded that the view taken by those courts which apply the statute to contractual as well as statutory limitation periods is a sounder and more logical approach to the problem, and agree with the Ohio Supreme Court when it said, in Greilich v. Monnin, 142 Ohio St. 113, 50 N.E.2d 310, that "this court finds no basis for engrafting on this broad and unambiguous statute an implied exception that would produce the regrettable result of denying to some litigants the right to commence a new action after a previous one has failed otherwise than upon the merits." Our statute applies in broad terms to actions which are commenced "within the time prescribed therefor", and we cannot infer a legislative intent to limit such actions to cases involving a time prescribed by statute, and to exclude those involving a time prescribed by contract.
As pointed out by Judge Cardozo in Gaines v. City of New York, 215 N.Y. 533, 537, 109 N.E. 594, 596, L.R.A. 1917C, 203, in holding that statutes that have their roots in the English statutes should be liberally construed:
"We think that, whatever verbal differences exist, the purpose and scope of the present statute are identical in substance with its prototype, the English act of 1623. * * * The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts." (Emphasis supplied.)
The parties here are in the same situation as those in Cortesi v. Fireman's Fund Ins. Co., 27 Ohio Cir.Dec. 100, cited with approval in Leithauser v. Hartford Insurance Co., 6 Cir., 124 F.2d 117, 120: "* * * `when the parties herein entered into the stipulation or agreement contained in the policy they must have, or at least should have considered it in the light of the provisions of such statute. It is presumed they knew the law, and that it was their intention to make their contract in conformity thereto * * *.'"
We hold, therefore, that the remedial provisions of Section 95.06 will be applied to toll the running of a contractual limitation period, as well as a statutory limitation period, and that the appellant's second suit was not barred by such contractual stipulation.
For the reasons stated, the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
TERRELL and HOBSON, JJ., and MURPHREE, Associate Justice, concur.
MATHEWS, SEBRING and THOMAS, JJ., dissent.
MATHEWS, Justice (dissenting).
This is an appeal from a summary final judgment entered by the Circuit Judge pursuant to notice. In reversing the summary final judgment of the Circuit Judge the majority opinion relies upon Section 95.06, F.S. 1953, F.S.A. The Federal government has pre-empted the field in reference to this matter and Section 95.06, F.S. 1953, F.S.A., does not apply.
The case of Railway Express Agency v. Hoagland, Fla., 62 So.2d 756, 759, has a history. The original suit was filed February 3, 1950. It was dismissed for want of prosecution and then reinstated without sufficient cause. It came to this Court for decision on the one question of alleged error in reinstating the case without good cause after the same had been dismissed for want of prosecution. This Court rendered an opinion on December 19, 1952, reversing the case and directing the Court below to reinstate the order dismissing the cause and to set aside the order reinstating the cause with the provision "without prejudice *829 to the right to pursue any course of action which may be open to appellee."
On February 9, 1953, a petition for rehearing was denied and the judgment of this Court became final.
On February 17, 1953, a new suit was filed based on F.S. Section 95.06, F.S.A. The uniform express receipts with reference to these goods were dated October 12th and 13th, 1949. They were destroyed by fire on October 22, 1949. The appellee pleaded the Statute of Limitations as set out in the contract of carriers under Title 49, § 20(11) U.S.C.A., which provides as follows:
"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * Provided further, That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice: * * *"
The uniform express receipts issued by the appellee contained the following:
"7. As conditions precedent to recovery claims must be made in writing to the originating or delivering carrier within nine months after delivery of the property or, in case of failure to make delivery, then within nine months and fifteen days after date of shipment; and suits shall be instituted only within two years and one day after the date when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof."
In reply to the pleas, the appellant invoked F.S. Section 95.06, F.S.A., and then alleged that a prior judgment in favor of the appellee and against the appellant in a suit involving the identical subject matter had been before the Supreme Court of Florida, and that the Supreme Court of Florida had reversed such a prior judgment, but not on the merits. Railway Express Agency v. Hoagland, Fla., 62 So.2d 756.
On motion for summary judgment, the Circuit Court held that the present action was controlled by the express receipts authorized by the federal statute and that they were contracts provided for by a federal statute which superseded all state law on the subject. The lower Court entered a final summary judgment in favor of the appellee and against the appellant.
This case involves an interstate carrier under an interstate contract. It is another case where a federal statute has entered and preempted the field and state or federal legislation is withdrawn from the field covered by the federal statute and contracts made pursuant thereto. Without the federal statute and the contract made thereunder, F.S. Section 95.06, F.S.A. would apply. This section provides for the commencing of a new action where a judgment for the plaintiff is reversed on appeal. The new action was commenced within one year after the reversal. The state statute must yield to the federal statute on the subject and the Circuit Judge correctly applied the federal statute and the contracts made pursuant thereto. Missouri K. & T.R. Co. v. Harriman Bros., 227 U.S. 657, 33 S.Ct. 397, 57 L.Ed. 690.
In the case of Scheibel v. Agwilines, Inc., 156 F.2d 636, 638, the Circuit Court of Appeals, Second Circuit, said:

*830 "* * * Read in this context, section 183b is not, as the appellant argues, an isolated enactment whose negative language should be narrowly construed, but is a declaration of Congressional policy as to lawful contractual time limitations and one which in the interest of uniformity should be construed to exclude state statutes of limitation. * * *"
This rule works both ways. In the case of Atlantic Coast Line R. Co. v. Chase & Co., 109 Fla. 50, 146 So. 658, the railroad company attempted to take advantage of the state statute of limitations which provided for shorter period of time than the contract period in the bill of lading. Suit was brought within the time stipulated in the bill of lading which was authorized by the federal act but beyond the time provided for by the state statute. The Court held:
"Such contractual limitation as the foregoing, contained in a bill of lading covering an interstate shipment of goods by rail, is in accord with the terms of the U.S. Transportation Act of 1920 (Feb. 28, 1920, 41 Stat. 491, 49 U.S.C.A. Sec. 20(11), Interstate Commerce Act), and is valid and enforceable according to the intent of the federal law. The federal law on the subject has superseded all state statutes to the contrary, in so far as interstate shipments of goods are concerned. * * *
"The invocation by the carrier of the paramount federal right, given by the federal statutes, to insert, in bills of lading covering interstate shipments, provisions concerning a contractual limitation of time for bringing suits on the obligation assumed by the carrier under the bill of lading, inures to the benefit of the shipper as well as the carrier, and the shipper's right of action will not be barred in a less period of time that that stipulated in the bill of lading, although state statutes exist which do provide for a shorter period of limitation on actions that would be applicable to the shipment in the absence of a limitation by contract set forth in the authorized form of bill of lading used."
In the case of Henderson v. State, Fla., 65 So.2d 22, 25, this Court said:
"The Federal Act has pre-empted the field and under that act, labor unions have the right within the limits prescribed thereby of peaceful strikes for higher wages, or for better working conditions. Where state legislation denies a right guaranteed by Congress, such state legislation is in conflict with Federal law. * * *
"The question of the agreement of this Court with the majority opinion in the Wisconsin case [Amalgamated Ass'n of Street R. etc., v. Wisconsin Employment Rel. Bd., 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364] is not involved in this opinion. Article 6 of the Constitution of the United States, among other things, provides as follows:
"`This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'
"When a law, enacted by Congress, is construed and interpreted by the Supreme Court of the United States, that interpretation and construction becomes a part of the supreme law of the land, and an opinion by that tribunal upon the questions at issue is absolutely binding upon this Court, whatever may be the personal predilections of the Justices.
* * * So it is, that until the law is modified or changed by Congress, or the opinion with reference thereto is modified, changed or receded from by the Supreme Court of the United States, this Court and every other court, is bound to give full effect to the *831 law as construed in the opinion, for it is the supreme law of the Land."
The judgment appealed from should be affirmed.
SEBRING, J., concurs.
THOMAS, J., agrees to conclusion.